### COOK *v.* THE STATE.

1. In an indictment for murder, which charges that the accused did kill and murder a named person by shooting him with a gun, from the effects of which shooting he died, it is not necessary to allege that the gun " was loaded with powder and leaden balls."

2. Where in such an indictment the given name of the person alleged to have been murdered is interlined, in lieu of another name which is " crossed out," and is in different ink and a different handwriting from the rest of the indictment, a demurrer upon the ground that, for this reason, the person alleged to have been murdered is not sufficiently identified is without merit.
3. Where the court-house of a county has been destroyed, an indictment found and returned into the superior court of such county, by a grand jury sitting in a building, located at the county site, which has been " provided " by the proper county authorities as the place for holding that term of such court, is not void, although such county authorities may not, " by order or resolution duly passed and placed upon their minutes," have " constituted and designated " such building as the place for holding the court, and may not have so " constituted and designated " it " by advertisement or in any other public and formal manner."
4. The verdict was amply supported by the evidence, and there was no error in overruling the motion for a new trial.

Argued November 16,— Decided December 8, 1903.

Indictment for murder.    Before Judge Roberts.    Wilcox superior court.    October 5, 1903.

*E. H. Williams* and *J. L. Bankston,* for plaintiff in error.

*John C. Hart, attorney-general,* and *John F. DeLacy, solicitor-general,* contra.

FISH, P. J. Cook was tried, at the September term, 1903, of the superior court of Wilcox county, upon an indictment found at that term, charging him with the offense of murder. Before entering his plea of not guilty, he demurred to the indictment, and also filed a plea in abatement. The demurrer was overruled, and the plea in abatement was stricken upon motion of counsel for the State. The defendant excepted, pendente lite, to each of these rulings. The case proceeded to trial before a jury, and a verdict was rendered finding the accused guilty. He made a motion for a new trial, which was overruled, and he excepted.

1. Error is assigned in the bill of exceptions upon the overruling of the demurrer. One ground of the demurrer was, that the indictment failed to allege that the gun with which it was charged the crime was committed "was loaded with powder and leaden balls." The indictment charged that the accused " did then and there unlawfully and with force and arms," etc., " kill and murder one Jonas Snell . . by shooting said Jonas Snell with a gun, from the effects of which shooting said Jonas Snell died " on a named date. It was not necessary to allege that the gun " was loaded with powder and leaden balls." The charge was that the accused killed and murdered Snell by shooting him with a gun. By necessary implication, the indictment charged that the gun was loaded, for one can not shoot and kill another with an unloaded gun. The question made by the demurrer has long since been decided by this court adversely to the contention of the plaintiff in error. *Peterson* v. *State,* 47 *Ga.* 524; *Thomas* v. *State,* 77 *Ga.* 44.

2. Another ground of the demurrer was, that the person alleged to have been murdered was not sufficiently identified in the indictment, in that the deceased was first designated in the indictment as John Snell and again as Jonas Snell, " the name John being crossed out and the name Jonas being inserted in lieu thereof, and the said erasure and interlineation being in different ink and in a different handwriting from that of the remainder of said bill

of indictment." There was no merit in this ground of the demurrer. It will be observed that the indictment was not demurred to upon the ground that it appeared, from the erasure and interlineation, to have been altered after it had been returned by the grand jury, but upon the ground that, because of the erasure and interlineation, the person alleged to have been murdered was not sufficiently identified. The name "John," being erased, was no part of the indictment, and the name "Jonas," being interlined therein, in lieu of the name erased, was a part of the indictment. "If an indictment have an interlineation, and have a caret at the proper place where the interlined words are to come in, the court will take notice of the caret and read the indictment correctly." Rex *v.* Davis, 7 Car. & P. 319, 3 Bingham's N. C. 524. The indictment, as it appeared when the demurrer was presented, described the person alleged to have been murdered as "Jonas Snell," and only so described him. Hence there was no confusion or uncertainty in the indictment as to the name of the person alleged to have been murdered. This alone was sufficient reason for overruling the demurrer. But if the indictment had been demurred to upon the ground that it was defective because of an apparent alteration therein we think the demurrer would have been properly overruled. The presumption would have been that the erasure and interlineation were made before it was endorsed by the foreman. French *v.* State, 12 Ind. 670. "Interlineations or erasures in an indictment, apparently made before it had been acted upon by the grand jury, present no cause for quashing the same." *Jones* v. *State*, 99 *Ga.* 46.

3. The plea in abatement contained the following allegations: (1) That the indictment was not sufficient in law, "for the reason that the same was not found or preferred by the grand jury while assembled at the court-house of said county, . . or at any other place duly and legally constituted and designated by the commissioners of roads and revenues of said county by order or resolution duly passed and placed upon the minutes of their court previous to the finding of said bill of indictment." (2) That the building heretofore used as a court-house and wherein the superior court of the county had heretofore held its sessions, was sold by such commissioners and removed by the purchaser from its former site, leaving the county without a court-house. (3) "That the building

in the city of Abbeville, said county, known as Beaton's Hall, and in which the bill of indictment was found and returned into court by the grand jury, . . was never constituted or designated as the place for holding the present term of the superior court of said county, by advertisement or in any other public or formal manner, by said commissioners." (4) That "the chairman of the board of commissioners was duly authorized to procure suitable offices in some brick building in said city of Abbeville, for the ordinary and clerk of the superior court," but " the said order made no provision for the procurement of a temporary court-house or room in which the superior court . . might hold its sessions," and the minutes of the board of commissioners " show no further official action in reference to said matter." (5) " That in view of the foregoing, the said grand jury was without jurisdiction or authority to present or indict the defendant." Upon the argument of the demurrer, it was admitted by counsel for the accused that Beaton's Hall was within fifty yards of the site of the former court-house. It is evident that this was a purely technical plea; and we think it was properly stricken upon demurrer. The act of December 17, 1896 (Acts 1896, p. 50, Van Epps' Code Supp. § 6219), provides, that if for any cause "it shall or may be impracticable to hold any session or sitting of any superior court in this State at the court-house, or other place provided by law therefor, it shall and may be lawful to hold any such court, and any session or sitting thereof, at such place or places as the proper authorities of the county, in and for which such court is to be held, may from time to time provide for such purpose; provided, that no session or sitting of any superior or city court of this State can, under this act, be held at any place other than the county site of the county of such court." The court-house of Wilcox county having been destroyed, the county authorities of that county had, under this act, the power to " provide," from time to time, the place at which any session or sitting of the superior court should be held. So, if at the time this indictment was found and returned into court the court and the grand jury were sitting at a place which had been " provided " by the county authorities for the holding of that term of the superior court, then the grand jury was not without jurisdiction to find the indictment. In our opinion, the plea in abatement was defective in that it did not al-

lege that Beaton's Hall had not been "provided" by the proper county authorities as the place at which to hold the term of the superior court at which the indictment was found. Under the act of 1896, the county authorities had the power to provide the place at which the court should be held, and, for aught that appears to the contrary in the plea, they did provide the place where the court was held and the indictment was found. Indeed it does not appear from the plea that the board of commissioners of roads and revenues did not, " by order or resolution duly passed," designate the place for the court to be held; for they might have done this and neglected to have such order or resolution entered upon their minutes. But we do not rest our decision here. We place it upon the broader ground that the county authorities might have procured and furnished Beaton's Hall for a temporary court-house and let it be known that they had "provided" it as the place for holding this term of the superior court of Wilcox county, without constituting and designating it as such "by order or resolution duly passed and placed upon the minutes of their court;" and if they did so, such term of said court could have been lawfully held there. They could "provide" a place for the court to be held, without constituting and designating it as such " by advertisement or in any other public and formal manner."

While it would probably be better for county authorities, exercising the power conferred upon them by this statute, to designate the place for holding the court by some formal order or resolution and to give timely notice of the place provided " by advertisement or in some other public and formal manner," for the information of all persons interested, or likely to be interested, in the proceedings of the court to be held there, there is nothing in the statute which requires this to be done. The statute simply declares that it shall be lawful to hold the court "at such place or places as the proper county authorities . . may from time to time *provide* for such purpose." The primary meaning of the word "provide" is, "to look out for in advance; to procure beforehand; to get, collect, or make ready for future use; to prepare" (Webster's Dict.); and it is evidently used in this sense in the statute. There was nothing in the plea which negatived the idea that, previously to the assembling of the court at which the indictment was found, the proper county authorities had procured and prepared Beaton's Hall as the

place in which the court should be held.　We are clearly of opinion that the plea in abatement failed to show that the grand jury found the indictment while sitting at a place which had not been lawfully provided by the proper county authorities as the place for holding the September term, 1903, of Wilcox superior court.

4.　The motion for a new trial contained only the general grounds.　The verdict was amply supported by the evidence; consequently there was no error in overruling the motion for a new trial.　　　*Judgment affirmed.　All the Justices concur.*