A98A0718. DRAKE v. THE STATE.
(501 SE2d 14)

ELDRIDGE, Judge.

The defendant, Ricky Earl Drake, was tried as a recidivist and convicted by a Crisp County jury for the offenses of arson, possession of a firearm by a convicted felon, aggravated assault, fleeing and attempting to elude a police officer, driving under the influence of alcohol, and driving under the influence of diazepam. On November

13, 1995, the defendant filed a timely motion for new trial. It is from the denial of this motion that the defendant appeals.

1. The defendant contends that the evidence was not sufficient to support the conviction. "On appeal the evidence must be viewed in a light most favorable to the verdict, and [the defendant] no longer enjoys a presumption of innocence; moreover, on appeal this [C]ourt determines evidence sufficiency, and does not weigh the evidence or determine witness credibility. [Cits.]" *Grant v. State,* 195 Ga. App. 463, 464 (1) (393 SE2d 737) (1990).

Viewed in this light, the evidence shows the following. The defendant and his wife, Lisa Drake, had been separated since August 29, 1994. On the evening of November 17, 1994, Mrs. Drake began to move some of her belongings into a brick, double-wide trailer she had leased on Evergreen Street. Mrs. Drake did not spend that night at her new home on Evergreen Street, but stayed with a male friend. During the early morning hours of November 18, 1994, Mrs. Drake received several phone calls from the defendant, stating that he was at her new home on Evergreen Street. To prove he was at her home, the defendant described the interior of the trailer to Mrs. Drake and stated that her new fireplace "did burn well." Mrs. Drake verified that he was, in fact, in her home by calling him there on the telephone.

Ronnie Albritton testified at trial that on November 18, 1994, between 8:00 and 8:30 a.m. he was on his way to work and stopped by Mrs. Drake's new home on Evergreen Street. When he arrived, the defendant was in the yard with a beer in his hand. Albritton talked with the defendant for ten to fifteen minutes. When he left, the defendant was still at Mrs. Drake's trailer.

A neighbor noticed a black pickup truck with a flat bed leave Mrs. Drake's trailer sometime before noon on November 18, 1994. A few minutes later, the neighbor noticed smoke coming from the vicinity of the trailer. As the smoke became heavier, he could tell it was coming from one of the roof vents and called 911.

The fire department received the call around 11:31 a.m. When the fire department arrived, flames were coming out of the windows on the north front and the west end of the trailer. After an investigation, the fire department determined that the fire had been intentionally set and had been started in several large bags of clothes in the living room-dining room and in a pile of coats and papers in the southeast corner bedroom. The fireplace was not near either location, and the electricity had not been turned on in the trailer. Further, there was no physical evidence that the fire was electrical in nature.

Deputy Lee Brian Hobbs with the Crisp County Sheriff's Department testified that at approximately 11:30 a.m. on November 18, 1994, he was on patrol when he witnessed a black Ford pickup truck,

driven by the defendant, run a stop sign at the intersection of Spring Street and Evergreen Street. Deputy Hobbs pursued the pickup truck with his siren and blue lights on. During the chase, the defendant ran several more stop signs; drove at speeds in excess of the speed limits; drove in an erratic manner, crossing the centerline; and threw a beer bottle at the deputy. Twice the defendant pointed a sawed-off shotgun out the driver's window towards the deputy and, the second time, fired the weapon. When the shotgun discharged, the defendant dropped the shotgun, which was retrieved by the deputy. Sheriff Haralson and other law enforcement officials joined in the pursuit of the defendant. Sheriff Haralson attempted to stop the defendant by shooting out the tires of his truck, but was unsuccessful. Finally, Sheriff Haralson wrecked his patrol car into defendant's truck to stop him.

After the collision, the defendant did not appear to be injured, but was extremely agitated and refused to be removed from his truck. When deputies attempted to remove him, he kept trying to reach for something inside his truck. There were papers and other items in the truck that kept the deputies from having a clear view of the interior of the truck. However, the deputies could see both a razor or boxcutter and a knife in a black sheath on the floor board of the truck. The deputies handcuffed the defendant's right hand to the truck's mirror and used a "haul strap" to hold his left hand out of the window. After spraying the defendant several times with pepper spray, the deputies were finally able to subdue the defendant and take him into custody. The defendant was transported to the hospital where he tested positive for alcohol in his blood at 0.19 grams per deciliter and for diazepam in his blood at 13 micrograms per deciliter.

After his arrest, the defendant made a statement in which he admitted the following: On November 18, 1994, he went to his wife's trailer with the intent to kill both her and her male friend. When he arrived at the trailer, no one was home, so he gathered up toilet paper and, using a small lighter, started a fire in the living room of the trailer. The defendant then left in his black pickup truck, which had a wooden flat bed. Within a block or two of Mrs. Drake's trailer, the defendant ran a stop sign, and when he was pursued by the Crisp County deputy, he attempted to elude the officer because he thought there was an active warrant for his arrest. Once the defendant realized that he would not be able to outrun the deputy, he pointed a sawed-off shotgun out the driver's window and fired the weapon at the deputy's vehicle. The force of the shotgun discharging the shell caused him to drop the weapon. Mr. Drake further stated that he threw out of the truck's window papers that had his correct identity on them in the hope that he could get far enough in front of the deputy to stop and abandon the vehicle.

Lisa Drake was called as a witness by the defendant. On cross-examination, she testified that the defendant admitted to her that he might have set papers on fire at her trailer and that he fired a shotgun while trying to get away from Deputy Hobbs.

The evidence was sufficient to enable a rational trier of fact to find the defendant guilty beyond a reasonable doubt of the offenses with which he was charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The defendant's second enumeration of error alleges that the trial court erred in allowing the in-custody statements of the defendant into evidence during the trial because the statements were not made voluntarily. The defendant argues that he was under the influence of alcohol and diazepam at the time of the interview, that he cannot remember giving a statement, and that it took him two days to "return to normal."

During the *Jackson v. Denno*[1] hearing, the Georgia Bureau of Investigation agent who interviewed the defendant testified that the interview was conducted at approximately 5:20 p.m. on November 18, 1994, approximately six hours after the defendant was arrested and transported to the hospital. The agent testified that prior to the interview, the defendant was read his *Miranda*[2] rights. The defendant also signed a waiver certificate which stated the date, the time, the location where the interview was being conducted, the interviewer's identity, the defendant's name, age, current address, and his highest completed school level, the defendant's *Miranda* rights, and a brief summation of what was going to be discussed during the interview. The waiver concluded with a statement, which was signed by the defendant, that he understood his rights and, having those rights in mind, was willing to talk about the chase by the Crisp County deputies. The agent further testified that during the interview, the defendant was coherent, his answers were responsive to the questions, and he did not appear to be under the influence of drugs or alcohol. The agent went on to testify that the interview was conducted in a small room with little ventilation, and he did not smell alcohol on the defendant. The agent testified that the defendant's eyes were bloodshot, and when he asked the defendant if he was intoxicated, the defendant responded in the negative and stated that he had been sprayed with pepper spray. The agent testified that at no time did the defendant state that he no longer wished to talk about the case or ask the agent to stop the questioning. Under the totality of these circumstances, the trial court was authorized to find that the

[1] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).
[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

defendant knowingly waived his rights, and despite his previous consumption of alcohol and drugs his statements were made voluntarily. *Garcia v. State*, 267 Ga. 257, 258 (477 SE2d 112) (1996); *Philmore v. State*, 263 Ga. 67, 68 (428 SE2d 329) (1993). The trial court's finding must be upheld, since it is not clearly erroneous. *Adams v. State*, 264 Ga. 71 (440 SE2d 639) (1994).

3. The defendant contends the State improperly placed his character into issue, and the trial court erred by denying his motion for a mistrial.

Upon arrest, the defendant gave the arresting officers a false name. On direct examination, the prosecutor asked Colonel Hancock of the Crisp County Sheriff's Department at what point he learned the true identity of the defendant. Colonel Hancock responded by stating "[s]ometime at the hospital, we got a call from another law enforcement agency that was able to tell us who was driving that truck and we had heard radio traffic concerning Richard Drake all the time that we were chasing the truck telling us if that was the subject, then he was a wanted person out of Macon County." The defendant objected to such testimony and moved for a mistrial. The trial court denied the defendant's motion for mistrial and gave curative instructions to the jury to disregard the testimony. After the curative instructions, the defendant renewed his motion for mistrial. "Given that the testimony was non-responsive to the prosecutor's question, and the trial court gave proper curative instructions to the jury, we find no abuse of discretion in the trial court's determination that a mistrial was not necessary to preserve [the defendant's] right to a fair trial." *Johnson v. State*, 223 Ga. App. 668, 671 (3) (478 SE2d 404) (1996); *Beach v. State*, 258 Ga. 700, 701 (373 SE2d 210) (1988); *Stanley v. State*, 250 Ga. 3 (295 SE2d 315) (1982).

4. In his final enumeration of error, the defendant contends that his Sixth Amendment right to an impartial trial and jury was violated because his trial was held at the Crisp County Law Enforcement Center.

On October 30, 1995, a jury was selected in this case in a courtroom at the Crisp County Courthouse. After the selection of the jury, but prior to the commencement of opening statements, the trial court announced the trial would be moved to the Crisp County Law Enforcement Center because the Crisp County Courthouse was presently under renovation and the noise level was unbearable. The defendant objected and argued that the courtroom at the Law Enforcement Center was too small, did not have a bar or jury box, and contained a metal door which led to the jail portion of the facility. The defendant further objected to the trial being conducted in a detention center which had razor wire fence around a portion of the premises. The trial judge stated that all jury trials had been held in

the Law Enforcement Center courtroom prior to the present courthouse being built, and that courtroom was still frequently used for trial. The trial judge also went on to state that (1) the door in the courtroom which led to the jail portion of the center would not be in use during the trial; (2) a bench and bar, as well as a jury box, were present in that courtroom; and (3) the furnishings were similar to the furnishings in the courtrooms in the courthouse.

"OCGA § 15-6-18 (a) contemplates that cases tried at places other than at a courthouse shall be valid. A verdict returned in the superior court by a jury sitting in a building, located at the county site, which has been provided by the proper county authorities as the place for holding that term of such court, is not void." (Citations and punctuation omitted.) *Pittman v. State*, 196 Ga. App. 864 (397 SE2d 302) (1990); see OCGA § 15-6-18 (a); *Davis v. State*, 240 Ga. 763, 765 (243 SE2d 12) (1978); *Cook v. State*, 119 Ga. 108 (3) (46 SE 64) (1903). There is nothing within the wording of OCGA § 15-6-18 (a) which requires that an alternative place for holding court other than the county courthouse be designated the place for holding the court "by some formal order or resolution and to give timely notice of the place provided by advertisement or in some other public and formal manner." (Punctuation omitted.) *Cook v. State*, supra at 112. "The statute simply declares that it shall be lawful to hold the court 'at such place or places as the proper county authorities . . . may from time to time *provide* for such purpose.'" (Emphasis in original.) Id. There has been no showing that the Crisp County Law Enforcement Center was not located in the county site of Crisp County or that such facility "had not been provided by the proper county authorities as a place for holding that term of the Superior Court of [Crisp] County." *Pittman v. State*, supra at 864 (2). Further, there has been "no showing that the trial itself was conducted in a manner not befitting a judicial body." *Davis v. State*, supra at 765 (2).

"Under the Sixth Amendment, in order for [a defendant] to establish the denial of his right to an impartial jury, he must show either (a) *actual* juror partiality or (b) circumstances *inherently prejudicial* to that right." (Citations and punctuation omitted; emphasis in original.) *Jones v. State*, 157 Ga. App. 163, 164 (276 SE2d 674) (1981). No such showing has been made in this case. "[T]he [defendant has] not shown that the challenged practice was so inherently prejudicial as to pose an unacceptable threat to [the] defendant's right to a fair trial." (Citation and punctuation omitted.) *Chancey v. State*, 256 Ga. 415, 435 (349 SE2d 717) (1986). We find no error.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

782

*John W. Sherrer, Jr.*, for appellant.
*John C. Pridgen, District Attorney, Denise D. Fachini, Assistant District Attorney*, for appellee.