## A08A0147. CRAVEN v. THE STATE.
(664 SE2d 921)

BARNES, Chief Judge.

A jury convicted David Wayne Craven of aggravated sodomy, aggravated child molestation, and child molestation. He appeals, contending that he was denied his Sixth Amendment right to a public trial and the trial court erred in restricting his cross-examination of a State's witness. For the reasons that follow, we affirm the convictions.

1. Craven asserts that his right to a public trial was denied in two ways, because court officials purportedly prevented some of his family members from entering the courtroom during voir dire, and because the trial court cleared the courtroom during the child victim's testimony.

(a) Craven's sister testified during the motion for new trial hearing that she and several family members tried to come into the courtroom when prospective jurors were being interviewed but a bailiff denied them entrance. She did not know the bailiff's name, and described him only as an older African-American man in uniform. Craven's attorney stated in his place that after questioning the potential jurors, he met with Craven's sisters and nieces to discuss the jury selection, and when they all began to return to the courtroom a bailiff stopped the relatives saying they could not go in. The attorney differed and the bailiff let them in. He argued that, because the relatives had not seen the potential jurors respond to questions, they could not contribute to the jury selection. In response, the State called three bailiffs as witnesses, all of whom testified that they did not bar anyone from entering the courtroom during jury selection. None of the bailiffs fits the sister's description of the man who she said barred the door, but Craven's lawyer was certain that the first bailiff was the one who started to bar the family from entering with him. The trial court noted that Craven had been out on bond at that time, not locked in a holding cell, that he and his lawyer must have known that the relatives were not in the courtroom during voir dire, and that Craven did not bring the issue to the trial court's attention at the time.

In its order denying the motion for new trial, the trial court found as fact that bailiffs and court officials did not bar Craven's family from the courtroom during voir dire in this case. The court was authorized to weigh the credibility of witnesses, and its factual findings were not clearly erroneous. *Adams v. State*, 245 Ga. App. 607, 610 (3) (538 SE2d 508) (2000). Further, Craven did not bring the matter to the trial court's attention when he learned of it, which was before the jury was struck, thereby foreclosing the trial court's ability to rectify the matter with a new jury pool or in any other way.

"Pretermitting whether any impropriety existed under the circumstances described, we conclude that [the defendant] has waived his right to complain about this issue by his failure to raise it at trial." *Lucas v. State*, 274 Ga. 640, 651 (20) (555 SE2d 440) (2001).

(b) Craven also contends that the trial court violated OCGA § 17-8-54 and his constitutional right to a public trial by clearing the courtroom during the child victim's testimony. The statute provides:

> In the trial of any criminal case, when any person under the age of 16 is testifying concerning any sex offense, the court shall clear the courtroom of all persons except parties to the cause and their immediate families or guardians, attorneys and their secretaries, officers of the court, jurors, newspaper reporters or broadcasters, and court reporters.

After the State asked the trial court to clear the courtroom during the victim's testimony pursuant to this statute, Craven responded, "Judge, I think under the rule that he's referring to, relatives of the defendant are permitted to stay. . . . So I would object to the extended excluse [sic] of my client's relatives." The following exchange took place:

> THE COURT: [T]he Court will clear the courtroom. There will not be any exceptions other than court personnel and, of course, counsel, the Defendant, law enforcement, prosecutor and the bailiffs. Ladies and Gentlemen, those of you in the audience, if y'all would step outside at this time.
> [DEFENSE COUNSEL]: Judge, you did not — did you excuse relatives of the Defendant as well?
> THE COURT: No, sir, I did not.
> [DEFENSE COUNSEL]: You're sending them out?
> THE COURT: Yes, sir.
> [DEFENSE COUNSEL]: We object to that, Judge.
> THE COURT: I understand. . . .

An advocate with the district attorney's office remained in the courtroom during the victim's testimony.

On appeal, Craven argues that he was denied his constitutional right to a public trial, then argues that the trial court exceeded the scope of OCGA § 17-8-54 by excluding his immediate family members from the courtroom during the child's testimony. In discussing whether he needed to show prejudice or not, he argues that allowing the "victim to testify with only her 'support staff' present certainly prejudiced Appellant's trial," because the victim "may not have been

willing to lie in the presence of people she knew, her Aunts." Alternatively, Craven argues that violating his right to a public trial was a structural error and he need not show prejudice, citing *Waller v. Georgia*, 467 U. S. 39 (104 SC 2210, 81 LE2d 31) (1984).

As to his claim of a constitutional violation, Craven "waived his right to now object that the order of exclusion denied him a public trial, and denied him due process of law. It is generally held that the right to a public trial may be waived by a defendant." *Henderson v. State*, 207 Ga. 206, 214 (2) (60 SE2d 345) (1950). Craven failed to challenge the constitutionality of the statute until after the victim testified.

> Such challenges must be raised at the first opportunity, and . . . [Craven's] failure to do so waives the issue[ ] on appeal. *Perez-Castillo v. State*, 275 Ga. 124, 125 (562 SE2d 184) (2002); *Hardeman v. State*, 272 Ga. 361, 362 (529 SE2d 368) (2000); *Kolokouris v. State*, [271 Ga. 597, 598 (1) (523 SE2d 311) (1999)].

*Robles v. State*, 277 Ga. 415, 421 (9) (589 SE2d 566) (2003).

As to the claim of a statutory violation, the trial court erred in removing Craven's immediate family from the courtroom while the victim testified. The court recognized that fact and met with counsel the next day and offered to recall the victim to testify and explain to the jury as much as possible why the court was doing so. Craven declined that offer because "having the child testify twice would unduly emphasize the child's testimony." The court then noted that the purpose of OCGA § 17-8-54 was "to protect the witness, the child, and it's not necessarily conferring a right upon the defendant." At this point, for the first time, Craven argued that "he was entitled to have his relatives in attendance when that witness testified because this is supposedly a public trial and they would be members of the public." He did not raise a contemporaneous constitutional objection to the trial court's action after the State moved to clear the courtroom during the victim's testimony. He did not argue then that clearing the courtroom of his relatives would violate his right to a public trial, but only objected to the statutory violation of removing his family.

As the trial court observed, the statute was "based upon a legislative determination that there is a compelling state interest in protecting children while they are testifying concerning a sex offense. [Cit.]" (Punctuation omitted.) *Goldstein v. State*, 283 Ga. App. 1, 4 (2) (640 SE2d 599) (2006). See *Martin v. State*, 205 Ga. App. 591, 593 (5) (422 SE2d 876) (1992) (trial court's refusal to clear courtroom during victim's testimony per OCGA § 17-8-54 did not violate

defendant's rights).

In this case, while the trial court erred in removing Craven's family from the courtroom, the error is harmless. The victim testified that Craven's sexual assaults upon her began when she was five and continued until she made an outcry at age eleven. She also testified that he touched her vagina with his hand and penis, made her lie on the bed with a blanket over her head, and placed his penis in all of her orifices. The victim's somewhat sparse testimony covers less than 20 pages of a 350-page record, and a great deal of other evidence supports Craven's conviction. The victim's grandmother described the details of the victim's outcry. A pediatrician who was qualified as an expert testified that when she examined the victim several months after the outcry, the victim was tearful, scared, and uncooperative during the genital examination, although the doctor was able to confirm that the child's hymen was in tatters.

The victim's mother testified that for the first week and a half that she "was in disbelief" that her husband had done these things, but that when the detective told her the victim claimed Craven had sodomized her, she "knew he did it because that's how he wanted it with" her. The victim used to have problems with leaking bowels, but the mother accepted the explanation of the victim's doctor that perhaps she had regressed with her potty training due to a new baby in the house. That problem stopped completely after Craven moved out of the house, which led the mother to believe that he had been causing the problem by assaulting the victim.

A child protective services worker from the Department of Family and Children Services, who was qualified as an expert in interviewing children about sexual abuse, testified graphically regarding the substance of her interview with the victim. The jury saw a videotape of the interview, a transcript of which is included in the record. In the tape, the victim says she thought it was time to tell somebody because she "couldn't go on living like that." When the abuse happened she felt as if she were "standing in the water wading and somebody pushed me into the deep end."

A nurse practitioner who was qualified as an expert in the area of sexual assault examination testified that the victim had extensive scarring that could only have been caused by repeated sexual assaults. Finally, a clinical psychotherapist who had been treating the victim testified that the child had eventually disclosed that Craven had injured her sexually and drew explicit pictures reflecting what had happened to her and how she felt about it.

Considering the evidence presented against Craven, we do not find that the trial court's actions constituted harmful error.

2. Craven contends that the trial court erred in restricting his cross-examination of a State witness. During direct examination, the

State asked the victim's mother if the investigating detective had informed her of the specific allegations the victim "had made regarding anal sodomy." She replied, "I told him that that's when I knew David had done that because that's how David wanted it with me too. . . . And that's what he wanted all the time." On cross-examination, the defense asked the mother if she would say that her relationship with Craven was "sexually normal," and the State objected that such matters were not relevant. The defense responded that the State had already elicited testimony from the witness regarding her sexual relationship with Craven, and further explained, "I want to know was she satisfying him. . . . If your wife has got you happy at the house, you ain't got to go out shopping for children." The trial court sustained the objection, noting that the State's evidence related to whether the witness believed the allegations against Craven or not. While Craven could explore that area he could not have "free room to go into their whole sexual life."

On appeal, Craven argues that the trial court abused its discretion in curtailing his right to a thorough- and sifting cross-examination. "The right of cross-examination in this state includes questioning a witness about subjects relevant to any of the issues in the case, not simply those matters elicited on direct examination." *Stone v. State*, 250 Ga. 718, 719 (300 SE2d 500) (1983). Conversely, a party has no right to cross-examine a witness regarding irrelevant matters, and in this case, the trial court did not abuse its discretion in sustaining the State's objection to questions about Craven's sexual relationship with his wife. *Miles v. State*, 201 Ga. App. 568, 569 (4) (411 SE2d 566) (1991).

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED JULY 9, 2008 — 

*Gilbert J. Murrah*, for appellant.
*J. David Miller, District Attorney, Robert R. Auman, James L. Prine II, Assistant District Attorneys*, for appellee.