A09A0839. PURVIS v. THE STATE.
(689 SE2d 53)

BARNES, Judge.

Following the denial of his motion for new trial, Robert Carroll Purvis appeals his conviction for child molestation. He contends the evidence was insufficient, that the trial court erred in denying his motion for new trial based on what he alleged to be several instances of ineffective assistance of counsel; that his rights were violated because his trial was held in the county jail courtroom; that the State failed to disclose evidence of the victim's prior accusations of molestation; and that the trial court improperly instructed the jury on expert witnesses and criminal intent. Following our review, we affirm.

On appeal from his criminal convictions, Purvis no longer enjoys a presumption of innocence, and we construe the evidence in a light

favorable to the jury's verdict. *Berman v. State*, 279 Ga. App. 867, 867-868 (1) (632 SE2d 757) (2006). We neither weigh the evidence nor assess the credibility of the witnesses, but merely determine whether the evidence was sufficient to enable a rational trier of fact to find all the essential elements of the crimes charged beyond a reasonable doubt. Id at 868.

So viewed, the evidence shows that the nine-year-old victim, A. P., told her elementary school counselor that her "real daddy," Purvis, had "bothered" her. The counselor contacted A. P.'s mother, who picked the child up from school and took her to the Department of Family and Children Services ("DFACS") to report the allegation. The mother testified that, later that day, the victim told her that on the day of the incident she had stayed home with Purvis when her paternal grandmother, younger brother, and cousin went to Wal-Mart. Purvis told her that if she stayed home he would hook up a video game in the bedroom and they could play videos. When they were in the bedroom, Purvis got on the bed with his daughter and rubbed her "between her legs." A. P. also told her stepfather and stepsister that Purvis had touched and rubbed her "between her legs."

The DFACS case manager testified that when the mother brought A. P. in for the first interview, she did not question the child, but made sure that she did not "have any marks, and that [she was] physically okay." She set up an interview at the Child Advocacy Center, which took place two days later, and observed the interview from the viewing room. She spoke with the victim at the conclusion of the investigation and A. P. told her that her father "touched her tutu and her butt." The caseworker testified that the child pointed to her "genital area and her butt indicating what she was meaning." After the post-interview discussions with the family, the case was closed because the father was incarcerated and "the mother was protective of the children," and the matter became a law enforcement investigation.

The forensic interviewer for the Child Advocacy Center testified that she had conducted between seven and eight hundred child forensic interviews and had over 650 posteducational hours in forensic interviewing and child development. During the interview with A. P., which was videotaped and played during the trial, the child indicated on an anatomical forensic drawing that she had received "bad touches" on the "tutu and the butt" which she identified as the female genitalia and the buttocks. In the interview, A. P. maintained her earlier statement that Purvis molested her, but she also said someone named "Andy" had molested her as well.

A. P. testified at the trial that she knew the difference between a good touch and a bad touch. She said that her cousin, Michael, had

YALE LAW LIBRARY

touched her in the bad way. She testified that she was not telling the truth when she told the forensic interviewer that Purvis molested her, and that she did not know why she said he had.

Purvis testified that while everyone went to Wal-Mart, he and A. P. were alone that day because she wanted to stay with him. He "happened" to ask her that day if "anybody has ever touched her" and that she did not answer. He took her in the bedroom and said "look here, anybody ever brung you in here and touched you right there?" He testified that he did not touch her. He further testified that he had asked her "a hundred times" before if anyone had touched her, and that on this occasion "she started stuttering" and he knew that something was wrong.

Purvis was convicted of child molestation and sentenced to fifteen years, with nine to serve in prison and the balance on probation. Purvis filed a motion for new trial, which was denied following a hearing.

1. Purvis challenges the sufficiency of the evidence, arguing that the only evidence of his guilt was his daughter's earlier statements which she recanted at trial.

"A person commits the offense of child molestation when such person . . . [d]oes any immoral or indecent act . . . in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of . . . the person." OCGA § 16-6-4 (a).

> [A. P.'s] recantation at trial requires a credibility determination in light of the State's evidence demonstrating [Purvis'] guilt, including the victim's videotaped statement describing the incidents of sexual abuse [Purvis] perpetrated against her. It is the jury's prerogative to choose what evidence to believe and what to reject. Issues regarding the credibility of witnesses are in the sole province of the jury and only the jury may analyze what weight will be given each witness' testimony.

*Dameron v. State*, 267 Ga. App. 671, 672 (3) (601 SE2d 137) (2004); see *Ochoa v. State*, 252 Ga. App. 209, 210 (1) (555 SE2d 857) (2001) (jury's role to resolve conflicts in child's statements after recantation).

Here, A. P. made a voluntary outcry to a counselor at her school and repeated the allegations to her mother, her stepfather, her stepsister, and a forensic interviewer. The weight to be given her purported recantation at trial was a credibility determination within the jury's province. From the evidence adduced at trial, we find that any rational trier of fact could have found defendant guilty, beyond a reasonable doubt, of child molestation. *Jackson v. Virginia*, 443

U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Purvis contends that the trial court erred in denying his motion for new trial based on what he alleged to be several instances of ineffective assistance of counsel.

To establish ineffective assistance of counsel under *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984), a criminal defendant must prove (1) that his trial counsel's performance was deficient, and (2) that counsel's deficiency so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for the deficiency. *Mency v. State*, 228 Ga. App. 640, 642 (2) (492 SE2d 692) (1997).

> The burden is on the defendant claiming ineffectiveness of counsel to establish that his attorney's representation in specific respects fell below an objective standard of reasonableness. . . . The reviewing court need not address both components if the defendant makes an insufficient showing on one, nor must the components be addressed in any particular order.

(Citations and punctuation omitted.) *Horne v. State*, 298 Ga. App. 601, 605 (2) (680 SE2d 616) (2009).

(a) Purvis claims trial counsel was ineffective for failing to realize that the victim recanted during the trial and cross-examining her regarding the recantation. As noted earlier, the victim said that what she told the forensic interviewer about Purvis touching her in a "bad" way was not true. At the new trial hearing, trial counsel testified that he did not recollect the child's statement, and that if she recanted his failure to respond was because of a misunderstanding of the testimony rather than trial strategy.

As deficiency in trial counsel's performance is only one component in an ineffectiveness analysis, pretermitting whether counsel's failure constituted ineffective assistance, it does not require reversal as Purvis fails to establish prejudice. For the reasons discussed in Division 1, we are persuaded that any conflicts in the victim's testimony were credibility determinations to be made by the jury.

(b) Purvis also claims that trial counsel was ineffective for failing to call his mother and the sheriff as witnesses. He argues that the witnesses would have provided testimony that the victim recanted before trial. Trial counsel testified at the new trial hearing that he made a strategic decision not to call Purvis' mother regarding the child's inconsistent statement because the grandmother did not want to testify, he thought her testimony was useless in that she solicited the purported recantation by "questioning the child," and he thought, given that, the cross-examination would have been too

damaging. He also testified that had the child's statement been made spontaneously he would have called the grandmother to testify. The sheriff was not a witness at the new trial hearing, and the only testimony that the victim recanted to him came from the grandmother and Purvis at the new trial hearing. Trial counsel testified that he talked with the sheriff before the trial and that the sheriff did not tell him that the victim ever said "anything helpful."

"The determination as to which defense witnesses will be called is a matter of trial strategy and tactics. Trial strategy and tactics do not equate with ineffective assistance of counsel. Effectiveness is not judged by hindsight or by the result." (Citation and punctuation omitted.) *McGhee v. State*, 237 Ga. App. 541, 544 (1) (a) (515 SE2d 656) (1999). Trial counsel articulated valid reasons for not calling the witnesses at issue to testify, and his strategy did not constitute ineffective assistance of counsel.

(c) Purvis claims that trial counsel was ineffective for failing to address the victim's prior accusations of molestation by her cousins. During trial, the victim testified that a cousin had touched her inappropriately. At the new trial hearing, trial counsel testified that he was not aware that the child made any prior accusations of molestation.

OCGA § 24-2-3 (b) — applicable in child molestation cases — excludes evidence relating to the past sexual behavior of the complaining witness with some limited exceptions, including: "(a) to show that someone other than the defendant caused the injuries to the child; (b) to show lack of victim credibility if the victim's prior allegations of molestation were false; and (c) to show other possible causes for the symptoms exhibited." *Williams v. State*, 236 Ga. App. 667 (1) (512 SE2d 363) (1999).

Here, there was no evidence of any prior accusations, false or otherwise, made by the child other than her statement at trial and testimony by Purvis' mother at the new trial hearing. There is also no indication that trial counsel was aware that the victim had previously falsely accused her cousins of molestation and failed to investigate the allegations. Also, the jury heard the testimony regarding the cousins at trial and thus it is highly unlikely that, even if counsel was ineffective in not ferreting out information about the victim's prior accusations, the deficiency so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency.

(d) Although Purvis contends trial counsel was ineffective for failing to request a *Gregg*[1] hearing regarding the victim's out-of-

---

[1] *Gregg v. State*, 201 Ga. App. 238, 240-241 (3) (b) (411 SE2d 65) (1991).

court statements, a trial court is not required to conduct a *Gregg* hearing to determine the statutory requirement of "indicia of reliability" before receiving child hearsay into evidence. See *Brock v. State*, 270 Ga. App. 250, 254 (8) (605 SE2d 907) (2004). Rather, "[t]he statutory requirement is met if, after both parties have rested, the record contains evidence which would support such a finding." (Citation and punctuation omitted.) *Williams v. State*, 290 Ga. App. 841, 845 (4) (b) (660 SE2d 740) (2008). Purvis has failed to show that any of the statements would have been excluded from trial had his trial counsel filed a motion under *Gregg*, and thus cannot prevail on this ineffective assistance claim.

(e) Purvis also contends that trial counsel was ineffective for failing to make various objections regarding hearsay testimony, the videotape going out with the jury, the foundation for the introduction of the victim's videotape, and character evidence.

Regarding the hearsay testimony, "[t]he erroneous admission of hearsay is harmless where legally admissible evidence of the same fact is introduced." (Punctuation and footnote omitted.) *Head v. State*, 254 Ga. App. 550, 551 (2) (562 SE2d 815) (2002). Thus, although Purvis complains that trial counsel was ineffective by failing to object to the testimony of the school social worker about what the victim said to the school counselor, the error was harmless as the testimony was cumulative of other properly admitted testimony.

While it is true that the trial court allowed the videotape to go out with the other evidence during jury deliberations, there is no evidence that the jury viewed the videotape as part of its deliberations. The trial court instructed the jury that "if for some reason, y'all want the tape replayed, you are going to need to let the bailiff know." The jury returned a verdict 30 minutes later, and there is no indication that the videotape was replayed.

> Our courts have consistently held that it is error to allow a jury to take written or recorded statements into the jury room during deliberations unless those statements are consistent with the defendant's theory of the case. See, e.g., *Lane v. State*, 247 Ga. 19, 20 (273 SE2d 397) (1981); *Heard v. State*, 169 Ga. App. 609 (314 SE2d 451) (1984). Thus, the question is not whether the trial court erred in allowing the jury to hear [the victim's] statement repeatedly, but whether the error was harmful.

*Fields v. State*, 266 Ga. 241, 243 (2) (466 SE2d 202) (1996). Because the record does not reflect that the jury requested that the bailiff replay the tape, Purvis cannot show that he was harmed by the

videotape going out with the jury. See *Nixon v. State*, 234 Ga. App. 797, 798-800 (1) (507 SE2d 833) (1998); compare *Summage v. State*, 248 Ga. App. 559, 561 (1) (546 SE2d 910) (2001) (trial court erred by allowing the jury to review the victim's videotaped interview during five hours of deliberations and evidence against defendant was not overwhelming). Actions of Purvis' trial counsel that resulted in no harm to Purvis do not provide any basis for a finding of ineffective assistance.

(f) Regarding Purvis' remaining claims of ineffectiveness,

> [w]e have carefully reviewed the trial transcript and the motion for new trial transcript and have determined that ample evidence supported the trial court's finding that [Purvis] did not carry his burden of proving ineffective assistance. All of [Purvis' remaining] arguments alleging ineffective assistance involve either (1) strategic decisions of his trial counsel or (2) actions that resulted in no harm to [Purvis].

*Maddox v. State*, 263 Ga. App. 507, 509 (2) (588 SE2d 305) (2003).

3. Purvis contends that his constitutional rights were violated because his trial was conducted in the county jail courtroom rather than the county courtroom.

> OCGA § 15-6-18 (a) contemplates that cases tried at places other than at a courthouse shall be valid. A verdict returned in the superior court by a jury sitting in a building, located at the county site, which has been provided by the proper county authorities as the place for holding that term of such court, is not void. There is nothing within the wording of OCGA § 15-6-18 (a) which requires that an alternative place for holding court other than the county courthouse be designated the place for holding the court by some formal order or resolution and to give timely notice of the place provided by advertisement or in some other public and formal manner. The statute simply declares that it shall be lawful to hold the court "at such place or places as the proper county authorities . . . may from time to time *provide* for such purpose." There has been no showing that the [Berrien County Law Enforcement Center] was not located in the county site of [Berrien] County or that such facility had not been provided by the proper county authorities as a place for holding that term of the Superior Court of [Berrien] County. Further, there has been no showing that the trial itself was conducted in a manner not befitting a judicial

body. Under the Sixth Amendment, in order for a defendant to establish the denial of his right to an impartial jury, he must show either (a) *actual* juror partiality or (b) circumstances *inherently prejudicial* to that right. No such showing has been made in this case. [Purvis has] not shown that the challenged practice was so inherently prejudicial as to pose an unacceptable threat to the defendant's right to a fair trial.

(Citations and punctuation omitted; emphasis in original.) *Drake v. State*, 231 Ga. App. 776, 781 (4) (501 SE2d 14) (1998).

4. Regarding Purvis' claim that the State violated the requirements of *Brady* by failing to disclose evidence related to the victim's previous molestation allegations, the State does not suppress allegedly exculpatory evidence if that evidence is not in the State's possession. *McBee v. State*, 210 Ga. App. 182, 183 (2) (435 SE2d 469) (1993). There is no evidence that the State had any evidence regarding these allegations that it withheld from Purvis. "It is elementary that counsel for the State can make available only such evidence as it has in its file, or of which it has knowledge, and is under no requirement to conduct an investigation on behalf of a defendant." (Punctuation omitted.) Id.

5. Purvis also contends that the trial court improperly charged the jury on expert witnesses and that the criminal intent charge shifted the burden to him.

Purvis' argument seems to be that he was prejudiced because the forensic interviewer was deemed an expert by the trial court's charge that "testimony has been given by a certain witness who in law is termed expert," without being formally denoted as such. Generally, nothing more is required to qualify as an expert than evidence that the person has been educated in a particular trade, science, or profession. See *Watkins v. State*, 259 Ga. 648, 649 (3) (386 SE2d 132) (1989). Here, the interviewer testified as to her credentials, was questioned as an expert by the State, and thus was either tacitly or impliedly accepted as such by the trial court. An expert witness need only be competent as an expert in his own field, and he need not have legal expertise. OCGA § 24-9-67. We discern no error.

Although Purvis contends that the burden of proof was impermissibly shifted to him in the trial court's charge on criminal intent, we have found that while this pattern charge creates a permissive inference, "it does not require the jury to draw a certain conclusion, nor does it place any burden on defendant." (Citation and punctuation omitted.) *Ross v. State*, 192 Ga. App. 65, 67 (4) (383 SE2d 627) (1989).We discern no error.

*Judgment affirmed. Miller, C. J., and Andrews, P. J., concur.*

DECIDED NOVEMBER 20, 2009 —
RECONSIDERATION DENIED DECEMBER 16, 2009 — ▮▮▮▮▮▮▮▮

*John G. Edwards*, for appellant.
*Catherine H. Helms, District Attorney, Albert H. Tester, Assistant District Attorney*, for appellee.