S10G0664. PURVIS v. THE STATE.

(708 SE2d 283)

HUNSTEIN, Chief Justice.

We granted certiorari to determine whether the Court of Appeals erred when it concluded that appellant Bobby Carroll Purvis's right to a public trial was not violated by the holding of his trial in the county jail. See *Purvis v. State*, 301 Ga. App. 648 (3) (689 SE2d 53) (2009). Because appellant produced unrebutted evidence that jail authorities excluded from the jail courtroom appellant's brother, a member of the public who wanted to attend appellant's trial, in violation of his rights under the Sixth Amendment of the United States Constitution and Art. I, Sec. I, Par. XI (a) of the Georgia Constitution of 1983, we reverse.

1. Appellant was indicted in Berrien County on a charge of child molestation involving a family member. The jury for appellant's trial was selected at the Berrien County courthouse. However, the trial itself was held on October 3, 2006 in a courtroom in the county jail. The record is completely silent regarding the reason, if any, for the trial court's decision to move the trial from the county courthouse to the jail courtroom. After his conviction, appellant asserted in his motion for new trial, inter alia, that he was denied his right to a public trial. In support of his assertion, appellant introduced the testimony of his brother, who said he was unable to enter the jail courtroom on the day of the trial because the courtroom door was locked and, after pressing the buzzer and asking to be allowed in, the jailer refused to unlock the door, even after being informed the

brother was there to observe the trial.[1] Although the State presented several jail officials who testified about their general policy to allow members of the public access to the jail courtroom, none of the State's witnesses directly rebutted the testimony by appellant's brother.[2] Indeed, the State expressly concedes in its brief that the brother "was kept out of the courtroom in the present case."[3]

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." The Sixth Amendment rights are applicable to the states. *Kesler v. State*, 249 Ga. 462, 471, fn. 5 (291 SE2d 497) (1982). The Constitution of Georgia also provides for a public trial for criminal defendants. Const. of Ga. 1983, Art. I, Sec. I, Par. XI (a).

> Georgia law . . . regarding the public aspect of hearings in criminal cases is more protective of the concept of open courtrooms than federal law. [Cits.] . . . [O]ur state constitution point-blankly states that criminal trials *shall* be public. [Cit.] . . . We see no friction between these state and federal constitutional provisions, properly interpreted, since the objectives of both are identical: access to judicial hearings for the public and fair trials for criminal defendants.

(Footnote omitted; emphasis in original.) *R. W. Page Corp. v. Lump-*

---

[1] Although appellant's brother indicated that he was not the only person prevented from entering the courtroom, those other persons did not testify at the hearing on the motion for new trial.

[2] Compare *McKibben v. State*, 187 Ga. 651, 652 (3) (2 SE2d 101) (1939) (defendant's claim that his right to a public trial was violated by the giving of the jury instructions in the jury room was rejected because "[i]t was not made to appear that . . . such room was not fully open to all of the public who might have desired to be present, the same as the court-room would have been"); *Craven v. State*, 292 Ga. App. 592 (1) (a) (664 SE2d 921) (2008) (defendant's claim that a bailiff barred family members from attending voir dire directly rebutted by the three court bailiffs' testimony).

[3] Although the State claims that the brother was excluded because he was listed as a defense witness in the case and the rule of sequestration had been invoked, our review of the record establishes that there is nothing therein to support this claim. We note that appellant's notice of appeal directed the clerk of the superior court to "omit nothing from the record on appeal"; the record before us has been certified to be a "true and complete copy of the record" in this case, see OCGA § 5-6-43 (a) ("it shall be the duty of the clerk of the trial court to prepare a complete copy of the entire record of the case, omitting only those things designated for omission by the appellant and which were not designated for inclusion by the appellee"); and, notwithstanding appellant's assertion on appeal that his brother was improperly excluded from the courtroom and this Court's grant of certiorari to address this specific issue, no effort was made to supplement the record on appeal with any alleged defense witness lists. See OCGA § 5-6-41 (f). Finally, we note that the State's claim is directly rebutted by the brother's affirmative response to the question posed at the motion for new trial hearing that he sought to attend the trial "just [as a member of] the general public."

*kin*, 249 Ga. 576, 578-579 (3) (292 SE2d 815) (1982).[4]

We need not here resolve whether the holding of a criminal trial within the confines of a jail or prison, in and of itself, deprives a criminal defendant of the right to a public trial. But see, e.g., *Washington v. Jaime*, 233 P3d 554 (Wa. 2010) (jail house setting for trial inherently prejudicial); *Bright v. Alaska*, 875 P2d 100 (Alaska App. 1994) (absent showing of compelling reasons, criminal trial held in prison violated federal and state right to public trial); *Vescuso v. Virginia*, 360 SE2d 547 (Va. Ct. App. 1987) (prima facie case of denial of public trial established when criminal trial held inside prison). See also Anno., Exclusion of Public from State Criminal Trial by Conducting Trial or Part Thereof at Other than Regular Place or Time, 70 ALR 4th 632 (1989). In this case, the violation of appellant's right to a public trial was established when he proved that his own brother, who wanted to attend the trial, was denied access to the courtroom without justification.

> In giving content to the constitutional and statutory commands that an accused be given a public trial, . . . . without exception all courts have held that an accused is at the very least entitled to have his friends, relatives and counsel present, no matter with what offense he may be charged.

(Footnote omitted.) *In re Oliver*, 333 U. S. 257, 271-272 (68 SC 499, 92 LE 682) (1948). See also *Vidal v. Williams*, 31 F3d 67, 69 (2d Cir. 1994) ("the Supreme Court has specifically noted a special concern for assuring the attendance of family members of the accused"); *Wisconsin v. Ndina*, 761 NW2d 612 (Wisc. 2009) (exclusion of family members implicates Sixth Amendment right to a public trial). The closure of the courtroom to appellant's brother was neither brief nor trivial, as appellant's adult brother was kept out of the courtroom during the entire trial, which involved criminal charges brought against appellant in regard to a family member. Compare *United States v. Perry*, 479 F3d 885 (II) (A) (D.C. Cir. 2007) (exclusion of defendant's eight-year-old son did not implicate Sixth Amendment right to public trial where trial on charges of unlawfully accessing a computer remained open to defendant's wife and general public); *Carson v. Fischer*, 421 F3d 83, 93 (2nd Cir. 2005) (no Sixth Amendment violation from exclusion during defendant's trial on narcotics

---

[4] Although *R.W. Page Corp.*, supra, was based upon the right to a public trial in Const. of Ga. 1976, Art. I, Sec. I, Par. XI, we apply the same construction to the virtually identical language in Const. of Ga. 1983, Art. I, Sec. I, Par. XI (a) ("[i]n criminal cases, the defendant *shall have a public . . . trial* by an impartial jury" (emphasis supplied)).

charges of defendant's ex-mother-in-law during span of a single witness's testimony, when other family members and general public were present). Accordingly, we reject the State's argument that jail officials' deliberate exclusion of appellant's brother from the courtroom during the entire trial on charges involving a family member was mitigated in any manner by the fact that jail officials selectively allowed other members of the public to attend the trial.

We do not find it significant under the facts in this case that the trial court itself did not specifically order the exclusion of appellant's brother from the courtroom. Compare *Presley v. Georgia*, 558 U. S. ___ (130 SC 721, 722, 175 LE2d 675) (2010) (trial court ordered courtroom closed during voir dire, thus excluding defendant's uncle, who was the "lone courtroom observer"); *Reid v. State*, 286 Ga. 484 (3) (c) (690 SE2d 177) (2010) (trial court ordered courtroom temporarily closed during testimony of two witnesses). While the trial court may not have deliberately intended that members of the public be prevented from attending the trial, it was the trial court that deliberately decided to hold appellant's trial in the county jail courtroom. By doing so, the trial court totally relinquished to jail officials the authority to control the public's access to the courtroom. As the United States Supreme Court has stressed, "[t]rial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials." *Presley*, supra, 130 SC at 725. We hold that the trial court, by deciding to hold appellant's trial in a facility where the public's access was governed exclusively by the jail authorities, failed in its obligation to take reasonable measures to accommodate public attendance at appellant's trial. Compare *Harper v. Mississippi*, 887 S2d 817 (Miss. App. 2004) (before holding trial in prison courtroom of two defendants charged with crimes committed after escaping the prison, trial court held pre-trial hearing where factual record was created to support necessity of holding trial in prison courtroom; trial court then made detailed provisions for those individuals the defendants wanted to attend the trial and reviewed arrangements made by prison authorities to accommodate public attendance at trial).[5]

---

[5] Nor does it affect our holding that appellant made no objection at trial. Because the record establishes that appellant was tried and convicted in one day, he could not have known that his brother, and possibly other members of the public, had been prevented from entering the jail courtroom during the trial so as to object to their exclusion. Compare *Reid v. State*, supra, 286 Ga. at 486 (3) (c) (defendant aware of trial court's temporary closure of the courtroom); *Gomez v. State*, 305 Ga. App. 204 (2) (699 SE2d 395) (2010) (defendant aware of public's exclusion when trial court ordered the courtroom cleared). Appellant thus raised the issue at the proper time in his motion for new trial. Moreover, as the United States Supreme Court stated in *Presley v. Georgia*, supra, 130 SC at 724-725, "[t]he public has a right to be present whether or not any party has asserted the right."

Although the closure here implicated appellant's Sixth Amendment right to a public trial, that right "may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information. [Cit.]" (Punctuation omitted.) *Presley v. Georgia*, supra, 130 SC at 724. However, as stated above, there is nothing in the record to explain why the trial court chose to hold appellant's trial in the jail courtroom, thereby causing the violation of appellant's right to a public trial. Compare *Harper v. Mississippi*, supra, 887 S2d at 817. We must therefore conclude that no circumstances, rare or otherwise, justified this closure.

Accordingly, we reverse the Court of Appeals with direction that it remand this case to the trial court for a new and public trial.

2. The Court of Appeals did not address any Sixth Amendment concerns in rejecting appellant's argument that his constitutional right to a public trial was violated because his trial was conducted in the county jail courtroom rather than the county courtroom. Instead, it relied exclusively upon the discussion of OCGA § 15-6-18 (a)[6] in *Drake v. State*, 231 Ga. App. 776 (4) (501 SE2d 14) (1998). That case, in turn, relied on the application of OCGA § 15-6-18 (a) in *Pittman v. State*, 196 Ga. App. 864 (397 SE2d 302) (1990), along with cases that are even older than *Pittman*. However, neither in *Drake*, an arson case out of Crisp County, nor in the instant case out of Berrien County did the Court of Appeals recognize that it is OCGA § 15-6-18 (c), enacted in 1994,[7] not OCGA § 15-6-18 (a), that is the pertinent subsection here. OCGA § 15-6-18 (c) pertains "[n]otwithstanding the provisions of subsections (a) and (b) of this Code section," id., to counties like Berrien and Crisp "having a population of not more than 50,000 according to the United States decennial census." Id. at (c) (1). See also 2000 Census, OCGA Vol. 42A, p. 659 (Berrien County having a population of 16,235), id. at 660 (Crisp County having a population of 21,996). The holding in *Pittman*, having been rendered in 1990, has thus been superseded by statute as it pertains to counties with a population of less than 50,000, and the Court of Appeals' reliance on that case in *Drake* and the instant case was misplaced.

---

[6] OCGA § 15-6-18 (a) provides:
   If for any cause it shall or may be impracticable to hold any session or sitting of any superior or state court at the courthouse or other place provided by law therefor, it shall be lawful to hold court and any session or sitting thereof at such place as the proper authorities of the county in and for which the court is to be held may from time to time provide for such purpose, provided that . . . no session or sitting of any superior court may be held under this subsection at any place other than the county site of the county of such court.

[7] See Ga. L. 1994, p. 1052, § 2.

As to those counties that come within its population limits, OCGA § 15-6-18 (c) (1)[8] provides that

> if for any cause it shall or may be impractical to hold any session or sitting of any superior or state court at the courthouse or other place provided by law therefor . . . , it shall be lawful to hold court and any session or sitting thereof at such place or places as the governing authority of the county in and for which the court is to be held may from time to time, by appropriate resolution, provide for such purpose, provided that no session or sitting of any superior court or state court may be held under this subsection at any place that is not open to and accessible by the public; *provided, further, that no criminal jury trial shall be conducted in such alternate or additional facility without the consent of the accused.*

(Emphasis supplied.)

As reflected in defense counsel's testimony and appellant's objections made on motion for new trial, no consent was obtained from appellant for the conducting of his criminal jury trial in the courtroom located inside the county jail, i.e., an alternate or additional facility under OCGA § 15-6-18 (c) (1).[9] Hence, rather than supporting the Court of Appeals' holding, OCGA § 15-6-18 expressly establishes that its holding was in error. Accordingly, for this additional reason we reverse the Court of Appeals in this case.[10] It follows that *Drake*, supra, 231 Ga. App. at 780 (4), which employs the same flawed reasoning, is also overruled.

*Judgment reversed. All the Justices concur.*

---

[8] Ga. L. 1998, p. 1159, § 2 amended OCGA § 15-6-18 to designate as subsection (c) (1) the language added as subsection (c) by Ga. L. 1994, p. 1052, § 2.

[9] Because OCGA § 15-6-18 (c) (1) expressly states that "no criminal jury trial shall be conducted in such alternate or additional facility without the consent of the accused," the plain language of subsection (c) (1) requires that the accused's consent be obtained in order to conduct a criminal jury trial in an alternate or additional facility. Compare *Cook v. State*, 119 Ga. 108 (3) (46 SE 64) (1903) (subsection (a) of OCGA § 15-6-18 requires no formal designation of alternate location for holding court). We therefore reject the State's argument that the mere absence of any objection by the accused to proceedings conducted in such alternate or additional facilities is sufficient to show compliance with OCGA § 15-6-18 (c) (1). While nothing in OCGA § 15-6-18 (c) (1) requires that the accused's consent be in writing, in order for our appellate courts to verify that the State has complied with this statutory mandate, an accused's consent to having his or her criminal jury trial conducted in an alternate or additional facility must be established by the record.

[10] Because this case will be remanded for a new trial, we need not address the second question for which we granted certiorari, namely, whether appellant's trial counsel was ineffective for failing to notice that the victim recanted at trial.

DECIDED MARCH 18, 2011.

*John G. Edwards*, for appellant.

*Catherine H. Helms, District Attorney, Albert H. Tester, Assistant District Attorney*, for appellee.