708 S.E.2d 303 (2011)
ROBINSON
v.
The STATE.
No. A10A1968.
Court of Appeals of Georgia.
March 18, 2011.
Steven E. Phillips, for appellant.
Paul L. Howard Jr., District Attorney, Christopher M. Quinn, Assistant District Attorney, for appellee.
DOYLE, Judge.
Joseph Robinson was charged with three counts of child molestation[1] and three counts of sexual battery.[2] A Fulton County jury found him guilty of two counts each of child molestation and sexual battery, and he was acquitted of the remaining two counts. Robinson appeals the denial of his motion for new trial, arguing that the trial court erred by (1) instructing the jury to disregard evidence that the victim had sexual relations *304 with her brother based on the rape shield statute;[3] (2) violating the continuing witness rule by sending out with the jury a copy of his arrest warrant and the supporting affidavit; and (3) denying his motion for mistrial after the State improperly commented on his silence. He also contends that he received ineffective assistance of counsel. For the reasons that follow we vacate and remand for new trial.
"On appeal from a criminal conviction, the evidence must be construed in [the] light most favorable to the verdict, and [Robinson] no longer enjoys a presumption of innocence."[4]
So viewed, the record shows that during a telephone conversation in August 2006, 11-year-old J.C. told her friend that she had been "raped" by Robinson, her older sister's former boyfriend.[5] J.C. told the friend that Robinson's "thing went in, but it didn't go in all the way," and that Robinson had threatened to kill J.C. if she told anyone. The friend urged J.C. to talk to the friend's mother, Diana House, who was a counselor and social worker, and J.C. told House that Robinson had raped her and threatened to hurt her mother if she told anyone about the rape. House encouraged J.C. to tell her mother about the assault, but instead J.C. told her mother that she should speak with House. J.C.'s mother, Iris Colvard, then called House, who relayed her conversation with J.C.
Colvard then spoke with J.C., who told her mother that on one occasion, she was at Robinson's house when he pushed her on the bed, covered her mouth, put his hand down her pants, and rubbed her vagina; he also threatened J.C., Colvard, and the rest of their family if she told anyone about the incident. J.C. also relayed two other incidents, one during which Robinson "tried to touch her" while she was sitting on his lap in the car and another one in a basement during which Robinson forced her to take off her pants and "tried to feel on her again." Colvard contacted the authorities, who began an investigation.
The police report from the initial responding officer stated that J.C. advised her mother that Robinson "did disrobe her and sexually assault her, making penetration of her vagina with his penis," and that he threatened her. C.R. Hampton, an investigator with the child exploitation unit, interviewed J.C., who told him that Robinson touched her on three separate occasions, once at her house and twice at his house. According to Hampton's report, J.C. explained that on one of the occasions, which occurred in the summer of 2005 in Robinson's basement, Robinson took off her pants, unzipped his own pants, and "tried to kiss her and touch her between her legs." A second incident occurred in Robinson's car, when he had her sit in his lap and pulled down his pants, and she could feel his "thing on her butt." J.C. reported that there was a third incident, but did not give any details. J.C. did not tell Hampton that she had been raped.
J.C. was also interviewed at the Children's Advocacy Center, during which she told Heidi Reese-Anderson that Robinson had "raped her." J.C. told Reese-Anderson that Robinson touched her inappropriately on three separate occasions, two times in his house and once in hers; J.C. did not relay an incident in an automobile. According to Reese-Anderson, J.C. told her that on one of the occasions, Robinson "tried to put his thing between her legs"; she never indicated that Robinson penetrated her vagina.
Robinson was charged with three counts of child molestation and three counts of sexual battery. At trial, J.C. testified that Robinson "raped" her. According to J.C., Robinson touched her during four separate incidents. The first occurred at his house in his room, and Robinson touched her vagina. The second time, J.C. was sitting on Robinson's lap while he was driving the car, and he pulled down his shorts, pulled J.C.'s shorts up, and put his penis "inside" her, but "not all the way." On a third occasion, J.C. was *305 in Robinson's basement when he instructed her to remove her pants and he touched her vagina with his finger. In the fourth and final incident, which also occurred at his house, Robinson put his hands "in [J.C.'s] vagina." J.C. denied that Robinson threatened her, but she testified that she did not tell anyone about the incidents initially because she "was afraid" of Robinson.
The jury found Robinson guilty of two counts of child molestation and two counts of sexual battery, and he was acquitted of the remaining two counts.[6] This appeal follows the denial of his motion for new trial.
1. Robinson argues that the trial court erred by instructing the jury to disregard certain evidence based on the rape shield statute, OCGA § 24-2-3. We agree.
During the trial, Robinson's trial counsel elicited testimony that J.C.'s older sister discovered 11-year-old J.C. and her 12-year-old brother having sexual intercourse. After J.C.'s sister testified about the incident on direct and cross-examination, the State moved to strike the testimony on the basis that it violated the rape shield statute and requested a curative instruction. Initially, the trial court concluded that the State had waived any objection to the testimony by failing to object at the time it was offered and by cross-examining the witness on the matter. During further argument, Robinson's trial counsel asserted that the State "opened the door" to the evidence by introducing testimony that the victim's demeanor and character changed after the alleged molestation by Robinson (which occurred during the same time frame that J.C. and her brother were discovered having sex), and the trial court appeared to agree. The trial court asked the prosecutor, "What does the rape shield [statute] say precisely?" The prosecutor responded that, "It holds, Judge, that in cases concerning sexual offenses, such as aggravated sodomy, where the rape shield statute does not apply, the past sexual behavior of the victim with persons other than the defendant is not admissible on direct or cross-examination." After concluding that Robinson had failed to give notice that he sought to introduce the evidence and had failed to seek a hearing as required by OCGA § 24-2-3(c), the trial court granted the State's motion to strike and instructed the jury to disregard evidence of the victim's alleged sexual conduct with her brother.
The State's explanation to the trial court regarding the rape shield statute was incorrect. OCGA § 24-2-3(a) currently provides:
In any prosecution for a violation of Code Section 16-6-1, relating to rape; Code Section 16-6-2, relating to aggravated sodomy; Code Section 16-6-4, relating to aggravated child molestation; or Code Section 16-6-22.2, relating to aggravated sexual battery, evidence relating to the past sexual behavior of the complaining witness shall not be admissible, either as direct evidence or on cross-examination of the complaining witness or other witnesses, except as provided in this Code section. For the purposes of this Code section, evidence of past sexual behavior includes, but is not limited to, evidence of the complaining witness's marital history, mode of dress, general reputation for promiscuity, nonchastity, or sexual mores contrary to the community standards.
This statute was amended in 2005.[7] Prior to the 2005 amendment, OCGA § 24-2-3(a), provided, in relevant part: "In any prosecution for rape, evidence relating to the past sexual behavior of the complaining witness shall not be admissible, either as direct evidence or on cross-examination of the complaining witness or other witnesses, except as provided in this Code section."[8] This Court previously interpreted the prior version of the rape shield statute as applying to child molestation cases[9] until the Supreme Court *306 of Georgia ruling in Abdulkadir v. State.[10] In Abdulkadir, the Supreme Court held that the rape shield statute, "by its plain terms, applies only to prosecutions for rape,"[11] reiterating that
in all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly. In so doing, the ordinary signification shall be applied to all words. Where the language of a statute is plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly. In fact, where the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden. Moreover, Georgia law provides that the express mention of one thing in an Act or statute implies the exclusion of all other things. In our reading of a statute, this Court is not authorized to disregard any of the words used therein unless the failure to do so would lead to an absurdity manifestly not intended by the legislature.[12]
The Abdulkadir Court further noted that
[w]hile there may be compelling policy reasons to apply the rape shield statute in prosecutions for crimes other than rape, the statute's terms state only that it applies to prosecutions for rape. That singular designation by the legislature indicates that the rape shield statute is excluded from prosecutions for all crimes other than rape. A court of law is not authorized to rewrite the statute by inserting additional language that would expand its application to include such other crimes. Any expansion of the rape shield statute's applicability must come from the legislature, as it alone is entrusted with the authority to amend existing laws.[13]
Following Abdulkadir, the legislature amended OCGA § 24-2-3 to extend the shield to "aggravated sodomy," "aggravated child molestation," and "aggravated sexual battery."[14] The amendment did not extend the rape shield statute to child molestation cases. Applying the reasoning and principles set forth in Abdulkadir, we hold that OCGA § 24-2-3, as it is currently written, does not apply to prosecutions for child molestation or sexual battery.[15]
The State relies upon Purvis v. State,[16] in which this Court stated in dicta that
OCGA § 24-2-3(b)applicable in child molestation casesexcludes evidence relating to the past sexual behavior of the complaining witness with some limited exceptions, including: "(a) to show that someone other than the defendant caused the injuries to the child; (b) to show lack of victim credibility if the victim's prior allegations of molestation were false; and (c) to show other possible causes for the symptoms exhibited."[17]
This statement conflicts with our holding in this case and the express language of OCGA § 24-2-3(a). We therefore disapprove of the above-quoted language in Purvis.
In the instant case, Robinson was charged with child molestation and sexual *307 battery, neither of which is expressly listed in the rape shield statute.
Admission of evidence is a matter which rests largely within the sound discretion of the trial court and an appellate court will not interfere with its rulings absent abuse of that discretion. However, this court has held repeatedly that the failure to exercise discretion when the law vests discretion in a judge, is reversible error. This is made very clear in those cases where the judge lets it be known that he does not think he has any discretion.[18]
The trial transcript clearly indicates that the trial court thought that the evidence regarding the victim's sexual history should have been excluded by the rape shield statute and did not think it had discretion to admit the evidence. Thus, the trial court erred by applying OCGA § 24-2-3(a) to this case and striking the testimony regarding the victim's previous alleged sexual conduct with her brother based on its conclusion that the rape shield statute prohibited Robinson from presenting evidence regarding J.C.'s prior sexual history.[19]
Nevertheless, the trial court's error does not necessarily mandate a new trial. Rather, in order for an error to be grounds for reversal, the appellant must show not only error but ensuing harm. . . . [A] reversal is not required if the evidence of guilt is overwhelming in that there is no reasonable probability that the verdict of the jury would have been different in the absence of this error.[20]
In the instant case, the only direct evidence of Robinson's guilt was J.C.'s testimony that Robinson sexually abused her. "In addition, the jury's split verdict supports [Robinson's] argument that even without the excluded testimony, the State's case was far less than overwhelming."[21] And "[w]e cannot determine what role this excluded evidence would have played in the jury's deliberations."[22] Therefore, because "we cannot say that it is highly probable that the error in excluding evidence of [J.C.'s] prior sexual history did not contribute to the jury's verdict,"[23] we vacate Robinson's convictions for child molestation and sexual battery and remand the case for a new trial.[24]
2. Based on our holding in Division 1, we need not address Robinson's remaining enumerations of error.
Judgment Vacated and case remanded.
ELLINGTON, C.J., SMITH, P.J., BARNES, P.J., MILLER, P.J., PHIPPS, P.J., ANDREWS, MIKELL, ADAMS, BLACKWELL, DILLARD and McFADDEN, JJ., concur.
NOTES
[1] OCGA § 16-6-4(a).
[2] OCGA § 16-6-22.1(b).
[3] OCGA § 24-2-3.
[4] (Punctuation omitted.) Gresham v. State, 281 Ga.App. 116, 117, 635 S.E.2d 316 (2006).
[5] Robinson was 20 years old when he began dating J.C.'s 16-year-old sister.
[6] The trial court merged the two sexual battery counts into the child molestation counts for sentencing.
[7] See Ga. L. 2005, p. 27, § 13.1. See also Gresham, 281 Ga.App. at 118, 635 S.E.2d 316.
[8] See Gresham, 281 Ga.App. at 118-119, 635 S.E.2d 316.
[9] See, e.g., Carson v. State, 259 Ga.App. 21, 23-24(4), 576 S.E.2d 12 (2002); Jarvis v. State, 253 Ga.App. 581, 583(2), 560 S.E.2d 29 (2002); McGarity v. State, 224 Ga.App. 302, 303-304(1), 480 S.E.2d 319 (1997); Flowers v. State, 220 Ga.App. 814, 816-817(5), 468 S.E.2d 199 (1996).
[10] 279 Ga. 122, 610 S.E.2d 50 (2005).
[11] Id. at 123(2), 610 S.E.2d 50.
[12] (Punctuation and footnotes omitted; emphasis in original.) Id. at 123(2), 610 S.E.2d 50.
[13] (Footnotes omitted; emphasis supplied.) Id. at 124(2), 610 S.E.2d 50. The Supreme Court specifically disapproved this Court's holdings that the rape shield statute applied to prosecutions for child molestation in Abdulkadir v. State, 264 Ga.App. 805, 807-808(3), 592 S.E.2d 433 (2003); McGarity, 224 Ga.App. at 303-304(1), 480 S.E.2d 319; and Flowers, 220 Ga.App. at 816(5), 468 S.E.2d 199. See Abdulkadir, 279 Ga. at 124(2), n. 15, 610 S.E.2d 50.
[14] (Emphasis supplied.) OCGA § 24-2-3(a).
[15] See Cantu v. State, 304 Ga.App. 655, 656(1), 697 S.E.2d 310 (2010) (noting that the rape shield statute applies to aggravated child molestation prosecutions, not prosecutions for child molestation).
[16] 301 Ga.App. 648, 689 S.E.2d 53 (2009), rev'd on other grounds, 288 Ga. 865, 708 S.E.2d 283 (2010).
[17] Id. at 652(2)(c), 697 S.E.2d 310, citing Williams v. State, 236 Ga.App. 667(1), 512 S.E.2d 363 (1999). We note that Williams was decided prior to Abdulkadir, 279 Ga. at 124(2), 610 S.E.2d 50 and the 2005 amendment to OCGA § 24-2-3.
[18] (Citation and punctuation omitted; emphasis supplied.) Gresham, 281 Ga.App. at 117-118, 635 S.E.2d 316.
[19] See Abdulkadir, 279 Ga. at 124(2), 610 S.E.2d 50; Gresham, 281 Ga.App. at 118, 635 S.E.2d 316.
[20] (Citations and punctuation omitted.) Gresham, 281 Ga.App. at 119, 635 S.E.2d 316.
[21] Id.
[22] (Punctuation omitted.) Snelling v. State, 215 Ga.App. 263, 267(1)(c), 450 S.E.2d 299 (1994).
[23] (Punctuation omitted.) Gresham, 281 Ga. App. at 120, 635 S.E.2d 316.
[24] We note that double jeopardy attaches and bars Robinson's retrial on Counts 3 (child molestation) and 6 (sexual battery) because he was acquitted of those charges. See id. at 120, n. 18, 635 S.E.2d 316.