## A10A0716. GOMEZ v. THE STATE.

(699 SE2d 395)

ADAMS, Judge.

Arandu Arroyo Gomez appeals from his conviction and sentence and the denial of his motion for new trial. We affirm.

1. He first contends the evidence was insufficient to support the verdict. However, other than twice reciting the evidence presented at trial, word-for-word (totaling 28 pages of the brief), Gomez offers no explanation whatsoever of how he contends the evidence was insufficient. He also fails to support this enumeration with argument or citation of authority, as required by Court of Appeals Rule 25 (a) (3), and therefore the enumeration is deemed abandoned. See Court of Appeals Rule 25 (c) (2); *Gartrell v. State*, 291 Ga. App. 21, 22 (1) (660 SE2d 886) (2008) (enumeration regarding sufficiency of evidence abandoned); *In the Interest of R. C.*, 289 Ga. App. 293, 294 (2) (a) (656 SE2d 914) (2008) (same); *Dix v. State*, 246 Ga. App. 338, 339 (1) (540 SE2d 294) (2000) (same).

Furthermore, the evidence supports the following summary of the facts, provided by the State:

[A]t least three Hispanic men came to the residence of Aracely Herrera on February 18, 2004. Two of these men were identified by Ms. Herrera and Mr. Vidales as the Appellant and Mr. Trebeno. They came to Ms. Herrera's residence to retrieve the $125,000.00 drug money owed to the Appellant or, in the alternative, to kidnap a member of the Martinez family. They forced Mr. Vidales, Mr. Morales and Mr. Elisalde into the residence at gunpoint. Once inside, they asked the three victims about [the] location of the drug money, hit them, threw them to the floor and bound them with gray tape. They later robbed them of their wallets and jewelry. Check stubs, photo identification cards and other items which had been stolen from Mr. Elisalde and Mr. Morales were recovered from the shoulder of the roadway of I-75 near the Chula-Brookfield Road exit.

When Ms. Herrera returned to her home, she was hit and kicked. Her hands were bound behind her back with tape. A hood was placed over her head and she was taken from her home to a residence in Fulton County, where she was held for two days until her rescue by a SWAT team. While being held at the Fulton County residence, Ms. Herrera was sexually assaulted by Appellant. He put a gun into her mouth and raped her, there being at least partial penetration before Mr. Trebeno pulled him off Ms. Her-

rera. . . . The Appellant and Mr. Trebeno were arrested inside the residence where Ms. Herrera was rescued.

These facts and others in the record support Gomez's conviction on one count of kidnapping Herrera with bodily injury, three counts of kidnapping the three men, three counts of armed robbery, four counts of possession of a firearm during the commission of a crime, and two counts of burglary.

2. Gomez contends the court erred by removing all unnecessary personnel from the courtroom during the hearing on his motion to suppress in violation of his right to a public trial. See *Waller v. Georgia*, 467 U. S. 39 (104 SC 2210, 81 LE2d 31) (1984).

At the pretrial hearing on several defense motions, the State asked the court to clear from the courtroom "all unnecessary personnel" during the testimony of Herrera, the main victim. Gomez's counsel requested that Gomez's cousin, who was one of the only members of the family who spoke some English, be allowed to remain. The court granted the State's motion but denied Gomez's request and cleared the courtroom. Herrera then took the stand but, unable to continue, she stepped down without testifying or even being asked a single question; she was never recalled to testify at the motion hearing. GBI Agent Stacy Carson, who had questioned Herrera during the investigation and recorded the questioning, was then called to the stand. At this point, Gomez's counsel did not request that the cousin be allowed to return. Carson was then questioned on direct by the State. Without prompting from the defense, the court then gave permission for Gomez's cousin to return; this occurred prior to the playing of the tape of Herrera's interview. Gomez did not object or protest the fact that the cousin had missed Carson's direct testimony. Gomez then cross-examined Carson.

A defendant is not required to show prejudice in this setting because the improper closing of a courtroom is a structural error; but reversal is required only where "the defendant properly objected at trial and raised the issue on direct appeal." *Reid v. State*, 286 Ga. 484, 488 (3) (c) (690 SE2d 177) (2010).[1] Here, Gomez did not raise a "constitutional objection to the trial court's action after the State moved to clear the courtroom during the victim's testimony[, and he] did not argue then that clearing the courtroom of his relatives would

---

[1] A defendant may waive his right to object on the ground that an order of exclusion denied him a public trial. *Henderson v. State*, 207 Ga. 206, 214 (2) (60 SE2d 345) (1950). See also *Peretz v. United States*, 501 U. S. 923, 936 (IV) (111 SC 2661, 115 LE2d 808) (1991) ("failure to object to closing of courtroom is waiver of right to public trial"), citing *Levine v. United States*, 362 U. S. 610, 619 (80 SC 1038, 4 LE2d 989) (1960).

violate his right to a public trial"; as such this objection was waived. *Craven v. State*, 292 Ga. App. 592, 594 (1) (b) (664 SE2d 921) (2008).

3. Gomez contends the court erred by allowing victim Herrera to testify at trial about her identification of the defendant from the photo lineup during the investigation without first giving the defense an opportunity to question her.

During the motion hearing after Herrera was unable to testify, the court indicated it was about to rule on the defense's motion to suppress identification testimony. Defense counsel said to the court, "I thought we were going to hold off on that until we hear her testimony." Counsel argued that he wanted to question Herrera about the photo lineup because she was only shown two pictures of the two men who were arrested, which was impermissibly suggestive; that any identification from that point forward was tainted, including a subsequent proper photo array; and that, accordingly, Herrera should not be allowed to identify the defendant at trial. The State argued that because Herrera was being shown pictures of the two people who were arrested at the scene of the crime, there could be no impermissible suggestion as to who the assailants were nor a substantial likelihood of misidentification.

The court agreed — it saw the situation differently from an improper show-up because Herrera was simply being shown the pictures of the same men who were arrested at the scene of her two-day ordeal. The court ruled that Gomez could raise his point about suggestiveness on Herrera's cross-examination at trial in the presence of the jury. The court also postponed actually ruling on the motion to suppress Herrera's identification evidence until the time that she testified, and it gave Gomez a continuing objection. During the trial, the State questioned Herrera about the two photos of the two perpetrators. She testified that she recognized the two men, and she explained what each man had done. The court allowed the testimony.

Gomez relies on *Holcomb v. State*, 128 Ga. App. 238 (196 SE2d 330) (1973), for the proposition that it is error, after the filing of a timely motion to suppress identification, to force the defense to first question the person making the identification in the presence of the jury. But in *Holcomb*, the defense "several times requested that the hearing on the motion to suppress the in-court identification not be held in the presence of the jury, and the trial judge in each instance refused." Id. at 240 (1). Here, however, there was a hearing outside the presence of the jury on Gomez's motion to suppress the identification testimony. Thus, *Holcomb* is not controlling.

At the hearing, the GBI agent testified about the two photo lineups, and Gomez cross-examined her. The trial court saw a video of the lineup procedures and saw the two photos and the subsequent

photo lineup cards. And the Supreme Court of Georgia has held that a detective's testimony is a sufficient basis for the denial of a motion regarding pretrial identifications. See *Clark v. State*, 279 Ga. 243, 245 (4) (611 SE2d 38) (2005) (denial of motion to suppress identification testimony affirmed despite failure of State to present victim's testimony). Furthermore, "[i]n determining whether the trial court erred in denying the motion to suppress identification testimony, this court may consider the evidence adduced both at the suppression hearing and at trial. [Cits.]" *Davis v. State*, 216 Ga. App. 580, 581 (1) (455 SE2d 115) (1995). Herrera testified at trial that during her captivity she saw the faces of two or three men who detained her. On cross-examination, Gomez did not ask Herrera anything about the photo lineups.

Here, given that the trial court heard evidence on the pretrial identifications, saw the video and the photos, and heard the trial evidence, and given that the defendant was captured at the scene of the crime, we find the trial court did not err in finding that under the totality of the circumstances, there was not a substantial likelihood of misidentification. See *Semple v. State*, 271 Ga. 416, 418 (2) (519 SE2d 912) (1999) ("the question is whether there was a very substantial likelihood of irreparable misidentification").

4. Gomez contends the trial court erred by allowing Gomez's statement into evidence. A *Jackson-Denno* hearing showed that while Gomez was being processed for intake and booking at the county jail and responding to routine questions regarding medical information, he interrupted the officer and asked his own questions. He wanted to know where he was and why he was there because he had never been on "this side" of Georgia before. He then asked whether "the female [would] be in the courtroom" and stated that he did not know anything "except that the female was sleeping in the other room . . . and then the next thing he knew, the cops hit him in the back of the neck." The trial court held that the statements were freely and voluntarily given and that they were admissible.

We find no clear error. See *Franks v. State*, 268 Ga. 238, 242 (486 SE2d 594) (1997) (clearly erroneous standard). The information here was not solicited. The officer was only asking routine questions for intake purposes. *Mincey v. State*, 257 Ga. 500, 506 (10) (360 SE2d 578) (1987) (questioning "during a routine booking procedure" "was not reasonably likely to elicit an incriminating response so as to constitute police interrogation"). And Gomez volunteered the information. "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by (the) holding (in *Miranda*)." *State v. Davison*, 280 Ga. 84, 87 (2) (623 SE2d 500) (2005), citing *Miranda v. Arizona*, 384 U. S. 436, 478 (III) (86 SC 1602, 16 LE2d 694) (1966).

5. Gomez contends the court erred by allowing introduction of his statement because the State failed to produce it ten days prior to trial as is required. See OCGA § 17-16-4. The State disclosed the statement five days before trial. Following Gomez's objection, the court held that the statement could not come in until ten days after the disclosure, which was during the trial. Eventually the court allowed the statement to come in on the ninth day after the State turned over the statement.

The court has broad discretion in these matters, and excluding the evidence is an extreme remedy:

> OCGA § 17-16-6 gives the trial court broad discretion in fashioning remedies for violations of OCGA § 17-16-4. Under OCGA § 17-16-6, the trial court may grant a continuance, permit an inspection, or grant an interview. The evidence may also be excluded, but that extreme remedy is warranted only if prejudice or bad faith is shown.

*Rollinson v. State*, 276 Ga. App. 375, 378 (1) (b) (623 SE2d 211) (2005). Here, Gomez has not shown prejudice or bad faith arising from the court's remedy to wait nine days from the date of disclosure. We find no reversible error.

6. Gomez contends the State failed to reveal an agreement with witness Mario Soto despite his motion to require the State to reveal any such agreements. Soto was a potential witness for the State who initially failed to respond to a subpoena before finally appearing at trial as a defense witness. He had knowledge of a plan to kidnap a certain person, which resulted in kidnapping Herrera by mistake. He in fact met with people who were planning the kidnapping. He implicated Gomez to some degree in the planning. And he led the officers to the Atlanta location where Herrera was being kept against her will.

On cross-examination by the State, in the midst of equivocal and confusing testimony, the State asked Soto, "Isn't it true that you only agreed to help find[ing] Cely Herrera after I told you if we found her body, you would . . . be indicted for her murder." Soto answered that he remembered. There was no objection to this testimony. Therefore, even if the statement could be seen as an agreement between the State and the witness, any objection has been waived for purposes of this appeal. See generally *Anderson v. State*, 286 Ga. 57, 58 (3) (685 SE2d 716) (2009) (failure to object to admission of evidence waives issue for appeal).

7. Gomez contends the State improperly commented on Gomez's silence. Gomez testified in his own defense and asserted that, as a part of the overall events, he, too, was a kidnapping victim, which

explained his presence where Herrera was being held. On cross-examination he was asked about his statements at the jail to the booking officer: "You didn't tell [the officer] that you had been kidnapped, did you?" Gomez claims this was an improper comment on his right to remain silent, but he did not object on that ground and thus waived this argument. Moreover, the question was relevant for someone who claimed as an alibi to have also been a victim of a crime. Cf. *Sheppard v. State*, 285 Ga. 36, 37 (2) (673 SE2d 852) (2009) (not a comment on the right to remain silent where prosecutor merely argued about defendant's different explanations for committing the crime).

8. Gomez claims the evidence of asportation was insufficient to support the convictions for kidnapping Vidales, Morales, and Elisalde. The evidence showed that the men were outside Herrera's home when armed men forced the three men to go inside the residence where they were bound with duct tape to keep them under control.

In 2008, the Supreme Court adopted a "standard for determining the sufficiency of evidence of asportation"; that standard "provides for the assessment of four factors":

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

*Henderson v. State*, 285 Ga. 240, 244-245 (5) (675 SE2d 28) (2009), quoting *Garza v. State*, 284 Ga. 696, 702 (1) (670 SE2d 73) (2008).[2] The test was designed to determine whether the movement was one "serving to substantially isolate the victim from protection or rescue — or merely a 'criminologically insignificant circumstance' attendant to some other crime." *Garza*, 284 Ga. at 702 (1).

Here, the movement of the men from outside the house to inside was brief and it did occur during the commission of a separate crime, the overall kidnapping plan. But the movement was not a part of that

---

[2] The legislature subsequently amended the kidnapping statute to provide that slight movement is sufficient to prove kidnapping as long as the movement was not incidental to another offense, then further defined what actions would not be incidental to another offense. This statute applies to crimes committed on or after the revised statute's effective date, July 1, 2009. OCGA § 1-3-4. The crime in this case occurred in [February 2004], and therefore the standard set forth in *Garza* applies.
*Horne v. State*, 298 Ga. App. 601, 603 (1), n. 1 (680 SE2d 616) (2009).

offense. And it "created an additional danger to the victims by enhancing the control of the gunmen over them." (Citation and punctuation omitted.) *Wright v. State*, 300 Ga. App. 32, 34 (1) (684 SE2d 102) (2009). We find the evidence of asportation sufficient.

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED JULY 13, 2010.

*Lon P. Kemeness*, for appellant.
*C. Paul Bowden, District Attorney*, for appellee.