**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 21, 2017**

# In the Court of Appeals of Georgia

A16A2209. IN THE INTEREST OF: J. H., A CHILD.

A16A2210. IN THE INTEREST OF: A. L., A CHILD.

A16A2211. IN THE INTEREST OF: T. L., A CHILD.

A16A2212. IN THE INTEREST OF: J. C., A CHILD.

A16A2213. IN THE INTEREST OF: K. S., A CHILD.

BARNES, Presiding Judge.

In these related cases, the juvenile defendants filed direct appeals from the juvenile court's orders transferring their delinquency cases to superior court for prosecution. Because the juvenile proceedings in these cases commenced after January 1, 2014, we conclude that OCGA § 15-11-564 of Georgia's new Juvenile Code required that the defendants comply with this Court's interlocutory appeal procedures. Accordingly, given that the defendants failed to follow those procedures, we dismiss these appeals for lack of jurisdiction.

The record reflects that after a series of car break-ins, the State filed delinquency petitions in the Juvenile Court of Douglas County alleging that five juvenile defendants (J. H., L. A., T. L., J. C., and K. S.) had committed acts in July

2015 which, if committed by an adult, would have constituted 32 counts of entering an automobile with the intent to commit a theft, one count of criminal gang activity, and one count of theft by taking. The delinquency petitions were originally filed in September 2015 and were later amended.

The State filed motions to transfer the delinquency cases to the Superior Court of Douglas County for prosecution. After conducting hearings on the State's motions, the juvenile court entered orders transferring the delinquency cases to superior court. The juvenile defendants then filed these direct appeals from the juvenile court's transfer orders.

The State contends that the juvenile defendants' appeals must be dismissed because they were required to proceed by interlocutory application rather than by direct appeal in light of OCGA § 15-11-564, which was enacted as part of Georgia's new Juvenile Code.[1] That statute provides:

> (a) The decision of the court regarding transfer of the case shall *only be an interlocutory judgment* which either a child or the prosecuting

---

[1] In 2013, the General Assembly adopted a new Juvenile Court that significantly revised Georgia law relating to juvenile proceedings. See Ga. L. 2013, p. 294, § 1-1. The new Juvenile Code became effective on January 1, 2014 and applies "to all offenses which occur and juvenile proceedings commenced on or after such date." Id. § 5-1.

attorney, or both, have the right to have reviewed by the Court of Appeals.

(b) The pendency of an *interlocutory appeal* shall stay criminal proceedings in superior court. A child transferred for trial as an adult in superior court shall be detained only in those places authorized for the preadjudication detention of a child as set forth in Code Section 15-11-504.

(Emphasis supplied.) Based on the language of OCGA § 15-11-564 and the legal context in which it was enacted, we agree with the State that the juvenile defendants were required to follow this Court's interlocutory appeal procedures.

"When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant." (Citation and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013).

And where [the General Assembly] borrows terms of art in which are accumulated the legal tradition and meaning of [years] of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.

3

*Morissette v. United States*, 342 U. S. 246, 263 (I) (72 SCt 240, 96 LE 288) (1952). See *Johnson v. Bradstreet Co.*, 87 Ga. 79, 82 (13 SE 250) (1891) ("Where a statute uses a word which is well known and has a definite sense at common law, or in the written law, without defining it, it will be restricted to that sense, unless it appears that it was not so intended.") (citation and punctuation omitted).

"In our search for the meaning of a particular statutory provision, we look not only to the words of that provision, but we consider its legal context as well." (Citation and punctuation omitted.) *Federal Deposit Ins. Corp. v. Loudermilk*, 295 Ga. 579, 588 (2) (761 SE2d 332) (2014). To that end, we presume that our legislature enacts statutes "with full knowledge of [the] existing law, including court decisions." *Dove v. Dove*, 285 Ga. 647, 649 (4) (680 SE2d 839) (2009).

Mindful of these principles, we turn to OCGA § 15-11-564, and, in particular, the General Assembly's use of the word "interlocutory" in that statute. The legal term "interlocutory" means "interim or temporary; not constituting a final resolution of the whole controversy." Black's Law Dictionary (10th ed. 2014). See *In re Motion of Atlanta Journal-Constitution*, 269 Ga. 589, 589 (502 SE2d 720) (1998) (per curiam) (citing Black's Law Dictionary and defining "interlocutory" as "interim" or "not final"). And Georgia courts have routinely held that a party seeking appellate review

4

of an order viewed as interlocutory must follow the interlocutory appeal procedures in OCGA § 5-6-34 (b). See *Cherry v. Coast House, Ltd.*, 257 Ga. 403, 404 (2) (359 SE2d 904) (1987) ("[W]hen the order appealed from is an interlocutory order, the appellate court does not acquire jurisdiction unless the procedure of OCGA 5-6-34 (b) for interlocutory appeal is followed."). See also *Gray v. Springs*, 224 Ga. App. 427 (481 SE2d 3) (1997); *Griffith v. Ga. Bd. of Dentistry*, 175 Ga. App. 533 (333 SE2d 647) (1985). Accordingly, in light of the common legal understanding of the word "interlocutory" and its implications for appellate review, we conclude that by referring in OCGA § 15-11-564 to a transfer order as "only . . . an interlocutory judgment" and as resulting in an "interlocutory appeal," the General Assembly intended for a party seeking appeal of an order transferring a delinquency case from juvenile court to superior court to follow the interlocutory appeal procedures in cases where the new Juvenile Code applies.

When the enactment of OCGA § 15-11-564 is viewed in the specific context of our longstanding jurisprudence addressing the appellate review of transfer orders, it becomes even more clear that the General Assembly intended for appeals in this context to proceed now by interlocutory application. The general rule has long been that a trial court order transferring a case from one court to another court is

interlocutory in nature and thus is not directly appealable as a final judgment under OCGA § 5-6-34 (a) (1). See *In the Interest of W. L.*, 335 Ga. App. 561, 562-563 (782 SE2d 464) (2016); *Mauer v. Parker Fibernet, LLC*, 306 Ga. App. 160, 161 (701 SE2d 599) (2010); *Griffith v. Ga. Bd. of Dentistry*, 175 Ga. App. 533, 533 (333 SE2d 647) (1985). For many years, however, Georgia courts have applied an exception to this general rule in cases where a juvenile court transfers a delinquency case to superior court for criminal prosecution. In that specific context, in cases predating the new Juvenile Code, Georgia courts held that an order transferring a delinquency case from juvenile court to superior court should be treated as a final order directly appealable under OCGA § 5-6-34 (a) (1). See *Fulton County Dept. of Family & Children Svcs. v. Perkins*, 244 Ga. 237, 239 (259 SE2d 427) (1978); *In the Interest of R. W.*, 299 Ga. App. 505, 505, n. 1 (683 SE2d 80) (2009); *Rivers v. State*, 229 Ga. App. 12, 13 (1) (493 SE2d 2) (1997); *Rocha v. State*, 234 Ga. App. 48, 50 (1) (506 SE2d 192) (1998); *J. T. M. v. State of Ga.*, 142 Ga. App. 635, 636 (1) (236 SE2d 764) (1977).

Against this legal background, the General Assembly enacted OCGA § 15-11-564 as part of the new Juvenile Code, referring therein to an order transferring a delinquency case from juvenile court to superior court as "only . . . an interlocutory judgment." OCGA § 15-11-564 (a). We must presume that the legislature was aware

6

of the legal background and that its use of this specific phraseology "was a matter of considered choice." (Citation and punctuation omitted.) *Anderson Anesthesia v. Anderson*, 333 Ga. App. 437, 439 (776 SE2d 647) (2015). Consequently, when viewed in the context of our case law regarding transfer orders, the General Assembly's adoption of OCGA § 15-11-564 reflects that in cases where the new Juvenile Code applies, orders transferring delinquency cases from juvenile court to superior court should now be treated like other types of transfer cases – i.e., as interlocutory orders subject to review by application under OCGA § 5-6-34 (b) – and no longer as an exception to the general rule.[2]

In concluding that this Court's interlocutory appeal procedures must be followed in the context of juvenile court transfer orders, we also note that OCGA § 15-11-564 (a) provides that an interlocutory transfer order entered by the juvenile court is one which "either a child or the prosecuting attorney, or both, have the right to have reviewed by the Court of Appeals." It is well-established law that "[a]ppeals by the State in criminal cases are construed strictly against the State," and that the

---

[2] In cases in which the new Juvenile Code does not apply because of when the juvenile court proceedings commenced, a party seeking appellate review of the transfer order may still file a direct appeal based on our prior precedent in this area. See *In the Interest of M. J.*, 326 Ga. App. 574, 576 (757 SE2d 184) (2014).

State may not appeal an issue in a criminal case or juvenile delinquency matter, whether by direct or discretionary appeal, unless expressly authorized by statute. *State v. Cash*, 298 Ga. 90, 91 (1) (a) (779 SE2d 603) (2015). See OCGA § 5-7-1 (listing statutory grounds upon which State can appeal in criminal and juvenile delinquency cases). Given this well-established law relating to appeals by the State, the General Assembly clearly included the above-quoted language in OCGA § 15-11-564 (a) to enable the prosecution, like the child, to challenge a juvenile court's transfer ruling through this Court's interlocutory appeal procedures. See generally *Zaldivar v. Prickett*, 297 Ga. 589, 591 (1) (774 SE2d 688) (2015) (when construing statutes, courts may consider "the other law . . . that forms the legal background of the statutory provision in question"). To construe the quoted statutory language more broadly as creating a right of the parties to direct appeal would conflict with the other references in the statute to a juvenile court transfer order as "only . . . an interlocutory judgment" and as resulting in an "interlocutory appeal," and we must avoid constructions of a statute that would render the language internally inconsistent. See *City of LaGrange v. Ga. Pub. Svc. Comm.*, 296 Ga. App. 615, 621 (2) (675 SE2d 525) (2009) (language of a statute should be construed, whenever possible, in a manner that renders it "consistent and harmonious") (punctuation and footnote omitted).

8

In summary, in cases like the present ones in which OCGA § 15-11-564 of the new Juvenile Code applies, a party seeking appellate review of an order transferring a delinquency case from juvenile court to superior court must follow this Court's interlocutory appeal procedures found in OCGA § 5-6-34 (b), including obtaining a certificate of immediate review from the juvenile court and then filing an application with this Court seeking permission to appeal from the transfer order.[3] But the juvenile

[3] *In the Interest of J. M. S.*, 334 Ga. App. 142 (778 SE2d 391) (2015) involved the direct appeal of an order transferring a delinquency case from juvenile court to superior court and was decided under Georgia's new Juvenile Code. See id. at 144, n. 3. The application of OCGA § 15-11-564 was not raised by the parties or addressed in the opinion, but the Court in a footnote quoted a case that predated the new Juvenile Code, *In the Interest of R. W.*, 299 Ga. App. at 505, n. 1, for the proposition that "[a]n order transferring a case from juvenile to superior court is a final order that is directly appealable." *In the Interest of J. M. S.*, 334 Ga. App. at 142, n. 1. Consequently, *In the Interest of J. M. S.* is overruled to the limited extent that it can be construed as standing for the proposition that an order transferring a delinquency case from juvenile court to superior court can be directly appealed in cases where the new Juvenile Code applies.

In the recent cases of *Eidson v. Croutch*, 337 Ga. App. 542, 544 (788 SE2d 129) (2016), and *In the Interest of W. L.*, 335 Ga. App. 561, 562-563 (782 SE2d 464) (2016), we referenced, in obiter dicta, case law addressing the appealability of juvenile court transfer orders that predated the new Juvenile Code. *Eidson* and *In the Interest of W. L.* did not involve the transfer of a delinquency case from juvenile court to superior court, and neither case discussed the appealability of such transfer orders under the new Juvenile Code. "Issues merely lurking in the record, neither brought to the court's attention nor expressly ruled upon, have not been decided so as to constitute precedent." *Eady v. Capitol Indem. Corp.*, 232 Ga. App. 711, 713 (502 SE2d 514) (1998). Hence, *Eidson* and *In the Interest of W. L.* do not affect or control the outcome in the present case.

defendants in these related cases failed to follow those procedures. "When the order appealed from is an interlocutory order, the appellate court does not acquire jurisdiction unless the procedure . . . for interlocutory appeal is followed." (Citation and punctuation omitted.) *Settendown Pub. Utility, LLC v. Waterscape Utility, LLC*, 324 Ga. App. 652, 653 (751 SE2d 463) (2013). The juvenile defendants' appeals therefore are dismissed for lack of jurisdiction.

*Appeals dismissed. Doyle, C.J., Miller, P.J., Ellington, P.J., Dillard, P.J., Andrews, Branch, McMillian, Mercier, Reese, Self, and Bethel, JJ. concur. Ray, and Rickman, JJ. concur in judgment only. McFadden, P.J., dissents.*

A16A2209. IN THE INTEREST OF J. H., a child.

A16A2210. IN THE INTEREST OF A. L., a child.

**A16A2211. IN THE INTEREST OF T. L., a child.**

A16A2212. IN THE INTEREST OF J. C., a child.

**A16A2213. IN THE INTEREST OF K. S., a child.**

MCFADDEN, Presiding Judge, dissenting.

The statute before us expressly grants a right to review by this court. It provides,"either a child or the prosecuting attorney, or both, have the right to have [transfer orders] reviewed by the Court of Appeals." OCGA § 15-11-564 (a).

For that reason I respectfully dissent from the majority's holding that § 15-11-564 invokes the procedure set out at OCGA § 5-6-34 (b), which the appellate courts call the interlocutory appeal procedure. That procedure does not afford a right to review by an appellate court. Appellate review under that procedure is available only by the grace of the trial court. It is conditioned on the trial court's grant of a

certificate of immediate review. OCGA § 5-6-34 (b). And the appellate courts "will not review the discretion vested in the trial court in granting or refusing a certificate for immediate review of interlocutory rulings." *Houser v. State*, 234 Ga. 209, 212, 214 S.E.2d 893 (1975).

I agree that we must consider whether the General Assembly's use of the word "interlocutory" in § 15-11-564 is an invocation of the procedure set out at OCGA § 5-6-34 (b). But I would hold that it is not.

If the General Assembly had meant to overturn the case law on which appellants relied in bringing this appeal, it would have done so expressly — not by implication. As a well-regarded treatise notes, "A fair construction ordinarily disfavors implied change." Antonin Scalia and Bryan A. Garner, *Reading Law*, § 52, p. 318 (2012). On that point, Georgia law is in full accord with that treatise.

> "'All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. They are therefore to be construed in connection and in harmony with the existing law, ... and their meaning and effect is to be determined in connection, not only with the common law and the constitution, but also with reference to other statutes and the decisions of the courts.'" *Thornton v. Anderson*, 207 Ga. 714, 718, 64 S.E.2d 186 (1951). "[S]tatutes are not understood to effect a change in the common law beyond that which is clearly indicated by express terms or by necessary

implication." *Sears v. Minchew*, 212 Ga. 417, 420(2), 93 S.E.2d 746 (1956).

*Avnet, Inc. v. Wyle Labs., Inc.*, 263 Ga. 615, 619–20, 437 S.E.2d 302, 305 (1993).

The inference that the statute implicitly overturned that case law is further weakened by the fact that nowhere else in the Code does the General Assembly rely on the word "interlocutory" to invoke the § 5-6-34 (b) procedure. The word "interlocutory" appears in only two places in the Appellate Practice Act. Neither involves the § 5-6-34 (b) procedure. On the contrary, OCGA § 5-6-34 (a) (4) grants a right to *direct* appeal from "judgments or orders granting or refusing applications for receivers or for interlocutory or final injunctions."

The other place the Act uses "interlocutory" is subsection (b) of OCGA § 5-6-35, the statute setting out the discretionary appeal procedure. (The Act doesn't use the expression "discretionary appeal procedure" either.) Subsection (b) addresses appeals under § 5-6-35 from interlocutory judgments: "The application shall specify the order or judgment being appealed and, if the order or judgment is interlocutory, the application shall set forth, in addition to the enumeration of errors to be urged, the need for interlocutory appellate review." OCGA § 5-6-35 (b). The legislature appears to have had in mind non-final orders for which an immediate appeal is authorized but

3

which are subject to the discretionary appeal procedure — for example, appeals from partial grants of summary judgment in divorce cases. See OCGA § 9-11-54 (h); 5-6-35 (a) (2).

In OCGA § 9-11-54 (h), by the way, the word "interlocutory" is conspicuous by its absence. Subsection 54 (h) notes that denials of summary judgment (in contrast to grants and partial grants) are subject to "review by direct appeal in accordance with subsection (b) of Code Section 5-6-34."

The phrase "interlocutory appeal" does appear in subsection (c) of OCGA § 5-7-1, the statue specifying when the state can appeal. But after using that expression, the General Assembly specifies, "as provided in Code Section 5-6-34."

The inference that the General Assembly's use of "interlocutory" is an invocation of OCGA § 5-6-34 (b) is still further weakened by another consideration. The express intent of OCGA § 15-11-564 is to extend to the state an appeal right previously afforded only to the child. The rule superseded by OCGA § 15-11-564 was "An order transferring a case from juvenile to superior court pursuant to OCGA § 15–11–39 is a final order and directly appealable. *J.T.M. v. State of Ga.*, 142 Ga.App. 635, 636(1), 236 S.E.2d 764 (1977). Careful legislators might have seen a double

jeopardy argument lurking in the phrase "final order" and declared transfer orders interlocutory in order to cut off that argument.

The inference that the General Assembly invoked § 5-6-34 (b) is weakened even more by the fact that transfer orders in this context are very different from other transfer orders. Unlike, for example, transfers from one superior court to another, the transfer of a delinquency case from a superior court to a juvenile court changes the nature of the case. The "central purpose" of a delinquency proceeding is "rehabilitation and treatment of the child and not punishment." *In re L.C.*, 273 Ga. 886, 888, 548 S.E.2d 335, 337 (2001); see also OCGA § 15-11-470. But upon transfer to superior court, the delinquency petition is dismissed, OCGA § 15-11-566, and the case proceeds as a felony prosecution. See OCGA § 15-11-561 (a) (3).

All of this does not absolutely foreclose an inference that the legislature intended to invoke the procedure set out at OCGA § 5-6-34 (b). But particularly in light of all of this, such an inference must give way to the proposition that when the General Assembly expressly granted "the right to ... review[] in the Court of Appeals," OCGA § 15-11-564 (a), it meant what it said and said what it meant.