**SECOND DIVISION**
**MILLER, P. J.,**
**BROWN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 7, 2019**

# In the Court of Appeals of Georgia

A18A1818. LOVE v. THE STATE.

MILLER, Presiding Judge.

A White County jury convicted Allen Jerry Love of one count of rape (OCGA § 16-6-1), two counts of incest (OCGA § 16-6-22), one count of aggravated child molestation (OCGA § 16-6-4 (c)), two counts of child molestation (OCGA § 16-6-4 (a)), one count of statutory rape (OCGA § 16-6-3), three counts of sodomy (OCGA § 16-6-2 (a) (1)), and one count of sexual battery against a child under 16 (OCGA § 16-6-22.1 (d)).[1] The Superior Court of White County denied Love's motion for new trial as amended, and he appeals. Love raises a host of arguments, including

---

[1] The charges against Love were based upon allegations involving three separate victims, each of whom was a stepdaughter of Love's at some point: Counts 1 and 2 related to B. W., Counts 3 through 9 involved K. B., and Counts 10 and 11 concerned M. M. (B. W.'s sister).

sufficiency of the evidence as to Counts 10 and 11 of the indictment, ineffective assistance of trial counsel, the denial of his motion to sever, and the failure to strike certain testimony by an expert witness. We find no error and affirm.

1. Love argues that the State failed to prove him guilty of Counts 10 (child molestation) and 11 (sexual battery against a child under 16) against victim M. M. beyond a reasonable doubt.[2]

(a) First, Love summarily contends that the evidence was insufficient to convict him of Count 10 (child molestation). The gravamen of Love's argument is that "M. M. refused to accuse Mr. Love at trial" and that it was therefore unclear "as to what exactly Mr. Love was alleged to have done to her . . . ." We are not persuaded.

Under Georgia law,

> [o]n appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, [443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979)]. As long as there is some competent evidence, even though

---

[2] Love has not enumerated as error the sufficiency of the evidence for his remaining convictions.

2

contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

(Citation omitted.) *Watkins v. State*, 336 Ga. App. 145, 146 (1) (784 SE2d 11) (2016). Relevant to this case, child molestation occurs when a person "[d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person." OCGA § 16-6-4 (a) (1).

So viewed, evidence adduced at trial revealed that M. M. formerly lived with Love, her mother, and her sister (B. W.). Although M. M. testified that she did not remember telling her mother that Love "used to squish [her] like a bug and shake [her] like a milk shake," she admitted that Love touched her in a way that she did not like and that she and Love had "a secret." She declined to elaborate or testify further, saying that she "just [did not] feel comfortable talking to other people about it."

M. M.'s mother testified that M. M. told her she had a secret with Love and that they played a "game." The game involved Love removing his clothing, getting behind M. M., and "squash[ing] her like a bug and sh[aking] her like a milkshake." M. M. said that, on these occasions, she would be on her hands and knees. M. M.'s mother then got on her hands and knees and asked M. M. to demonstrate what Love did; M.

3

M. "got behind [her] as in like the doggie style position and started to dry hump [her].

. . ." M. M. also said that Love did not wear clothes during these episodes and "describe[d] in detail what [Love] looked like naked," stating where he had hair and that "sometimes his thing sticks up and sometimes it don't."

An investigator with the White County Sheriff's Office videotaped a forensic interview of M. M. in 2010,[3] and the State introduced a copy of the interview into evidence and played the videotape for the jury. During the interview, M. M. described getting touches she did not like, including getting touched on her "private" and when someone laid on top of her, although she did not elaborate. Later in the interview, M. M. described Love "squishing [her] like a bug" and "shaking [her] like a milk shake." She further described the activity as Love lying on her and bouncing up and down. Using dolls, M. M. demonstrated herself lying face down with Love lying on top of her and bouncing up and down.

The investigator also interviewed M. M.'s sister, B. W. During the interview, B. W. stated that one evening, when M. M. complained to B. W. about a rash she had, M. M. told B. W. that she and "Allen have a secret" and that he "smushes her like a

---

[3] At the time of the interview, M. M. was six years old. At the time of trial, M. M. was 11.

4

bug and shakes her like a milk shake."[4] B. W. told her mother about M. M.'s statement,[5] and when B. W. and her mother asked M. M. what she meant, M. M. replied that "Allen gets on top of me and just shakes me." The State also introduced other acts evidence against Love involving an act of child molestation against a seven-year-old victim in 2006 or 2007.

Taken together, we conclude that this evidence was sufficient to convict Love of child molestation against M. M. beyond a reasonable doubt. See *Kirkland v. State*, 334 Ga. App. 26, 33 (3) (778 SE2d 42) (2015) (sufficient evidence to convict defendant of aggravated child molestation where victim was non-responsive at trial, but jury could consider victim's prior statements to mother, great-grandmother, and forensic interviewer, as well as similar transaction evidence); *Maurer v. State*, 320 Ga. App. 585, 588 (1) (740 SE2d 318) (2013) (sufficient evidence to convict defendant of child molestation where victim refused to testify and relatives, to whom victim reported the molestation, were reluctant, but forensic interview that included victim's outcry admitted into evidence); *Westbrooks v. State*, 309 Ga. App. 398, 400-

---

[4] B. W. offered similar testimony at trial.

[5] The record also includes a recording of the interview of B. W. and M. M.'s mother. However, it does not appear that the mother's interview was introduced into evidence. As a result, we have not considered it in deciding this appeal.

401 (1) (710 SE2d 594) (2011) (sufficient evidence to convict defendant of child molestation where victim did not provide details of molestation, but uncle and forensic interviewer testified to victim's outcry).

(b) Second, Love asserts that there was insufficient evidence to convict him of Count 11 (sexual battery against a child under 16). However, the trial court merged Count 11 with Count 10 for sentencing purposes.[6] Accordingly, "[w]e need not consider an enumeration of error which addresses the sufficiency of the evidence to convict on a count on which the trial court failed to enter judgment." (Citation omitted.) *Kollie v. State*, 301 Ga. App. 534, 540 (3) (687 SE2d 869) (2009).

2. Love next argues that the trial court erred in denying his motion to sever his trial by individual victim. According to Love, "nothing unified the allegations against the three . . . victims other than they involved similar conduct." Love contends that he therefore had an absolute right to have the offenses severed. We disagree.

Prior to trial, Love moved to sever the charges based upon the three individual victims, arguing that the victims were unrelated save for the nature of the allegations against Love and because of the "great time differential" between the victims. Of note, the State responded that it had filed notice of its intent to introduce evidence of

---

[6] Love's counsel agreed that Count 11 merged into Count 10.

6

other acts; as a result, even if Love's trial was severed based upon the separate victims, the State would still be permitted to introduce evidence of alleged conduct against the remaining victims. The trial court agreed, noting that the allegations against Love reveal "kind of a common course of conduct" or "a common plan."[7] As a result, the trial court denied Love's motion to sever.

Under Georgia law,

[i]f [multiple] offenses are not joined solely because they are of the same or similar character, and evidence of one charged offense would be admissible as a similar transaction during trial on another charged offense, the trial court is vested with discretion in deciding whether to grant a motion to sever. In making this decision, the court must consider the number of offenses charged, the complexity of the charges, and the complexity of the evidence and determine whether the jury will be able to fairly and intelligently parse the evidence and apply the law with regard to each charge.

---

[7] See OCGA § 24-4-414 (a) ("In a criminal proceeding in which the accused is accused of an offense of child molestation, evidence of the accused's commission of another offense of child molestation shall be admissible and may be considered for its bearing on any matter to which it is relevant."); *State v. McPherson*, 341 Ga. App. 871, 873 (800 SE2d 389) (2017) (language of OCGA § 24-4-414 (a) intended to create "a 'rule of inclusion,' with a strong presumption in favor of admissibility") (citation omitted).

(Citations and punctuation omitted.) *Machiavello v. State*, 308 Ga. App. 772, 773 (2) (709 SE2d 28) (2011). "Where in the sound discretion of the trial court, the number of offenses charged and the complexity of the evidence do not reasonably impinge upon a fair determination of the defendant's guilt or innocence as to each offense charged, a severance need not be granted." Id. at 774 (2) (citing *Chaparro v. State*, 279 Ga. App. 145, 147 (3) (630 SE2d 645) (2006)). "We review a trial court's denial of a motion to sever the trial of separate charges for an abuse of discretion." (Citation omitted.) *Smith v. State*, 249 Ga. App. 39, 40 (1) (547 SE2d 598) (2001). Of particular relevance, "the trial court does not abuse its discretion by denying a motion to sever if the evidence of one offense would be admissible as a similar act in the trial of the other offense." (Citation omitted.) Id.

In this case, the trial court noted that the allegations against Love revealed a "common course of conduct" or a "common plan," that "the law that I apply would apply to each offense so there is no confusion there," and that each element of each offense charged would have to be satisfied. In addition, the trial court's jury charge instructed the jury to consider each count of the indictment separately, and the jury delivered a verdict as to each charge separately. Finally, the trial court observed that

even if it granted Love's motion, the remaining allegations would be admissible as other acts evidence.[8] As a result,

> the crimes were simple, involved only one defendant and one victim each time, the court clearly charged the jury to consider each charge separately and the jury announced its verdict on each count separately. There was nothing complex about these [three] offenses such as could make it difficult for the trier of fact to distinguish the evidence and apply the law intelligently as to each offense. Lastly, the risk of prejudice ("smear effect") from this joint disposition was minimal. The evidence of either act could have been introduced at the trial of the other, which negates any claim that [Love] was impermissibly prejudiced by the trial of the charges together.

(Citations and punctuation omitted.) *Sanders v. State*, 236 Ga. App. 578, 580-581 (1) (b) (512 SE2d 678) (1999). In short,

> the facts in the [three] cases . . . are so similar that even if the [three] cases had been severed, each would have been admissible in the other case as evidence of a similar transaction. Accordingly, where the evidence of one crime would be admissible in the trial of the other crime, it cannot be said that the trial court abused its discretion in denying the motion for severance.

---

[8] See fn. 7, supra.

(Citation and punctuation omitted.) *Rocha v. State*, 234 Ga. App. 48, 53 (5) (506 SE2d 192) (1998), superseded by statute on other grounds, *In the Interest of J. H.*, 340 Ga. App. 733, 736 (797 SE2d 185) (2017). Compare *Smith*, supra, 249 Ga. App. at 41 (1) (trial court erred in denying severance of defendant's counts of rape of an adult woman and child molestation of his four-year-old grandson). Under the circumstances of this case, we conclude that the trial court did not abuse its discretion in denying Love's motion to sever.

3. Love also contends that the trial court erred by denying his motion for new trial based upon the State's alleged threat to a victim, K. B., that she would be prosecuted for perjury if she testified that Love did not abuse her. See *Giglio v. United States*, 405 U. S. 150, 153-154 (92 SCt 763, 31 LE2d 104) (1972). There is no merit to this argument.

In general,

[a] *Giglio* claim alleges that a prosecutor knowingly presented false testimony against the defendant. To establish a *Giglio* violation, it must be shown that: (1) the testimony given was false; (2) the prosecutor knew the testimony was false; and (3) the statement was material. Under *Giglio*, where the prosecutor knowingly uses perjured testimony, or fails to correct what the prosecutor later learns is false testimony, the false

evidence is material if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.

(Citations omitted.) *Hunter v. State*, 29 So3d 256, 270 (Fla. 2008). See also *Perkins v. State*, 144 So3d 457, 469 (II) (Ala. Crim. App. 2012) (citing *Williams v. Griswald*, 743 F2d 1533 (11th Cir. 1984)). See also *Washington v. Hopson*, 299 Ga. 358, 363 (2) (a) (788 SE2d 362) (2016). To that end, "the defendant must show that the statement in question was indisputably false, rather than merely misleading[,]" and "[t]he burden is on the defendant[] to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." (Citations omitted.) *Perkins*, supra, 144 So3d at 469-470 (II). Moreover, "the fact that a witness contradicts himself or herself or changes his or her story does not establish perjury." (Citations omitted.) Id. at 470 (II). In this regard, "[t]he trial court's findings of fact on motion for new trial are upheld unless clearly erroneous." (Citations omitted.) *Peralta v. State*, 276 Ga. 218, 219 (2) (576 SE2d 853) (2003).

Prior to trial, K. B. denied that any abuse occurred and initially told a forensic interviewer that "nothing was going on" between her and Love; however, she later admitted to the interviewer that Love had abused her. Subsequently, K. B. met with

11

Love's counsel, stating that she had "lied and that [Love] didn't do anything." Similarly, she spoke with a therapist about the abuse, telling the therapist on separate occasions that Love had abused her, had not abused her, and again that he had abused her. Thereafter, approximately one week before trial, K. B. again met with representatives of the State and told them that Love "never did anything."[9]

At trial, K. B. offered unequivocal and detailed testimony regarding Love's abuse, including accounts of anal, oral, and vaginal sex acts. She revealed that she did not initially disclose Love's actions because her mother loved him and she "just wanted her [mother] to be happy . . . ." She also testified that no one had threatened her or suggested that she change her account of what occurred and that she was telling the jury the truth to spare her sister from abuse. At sentencing, however, K. B. provided a brief, unsworn victim impact statement in which she simply stated Love "didn't do anything" and that she "lied on the stand." She claimed that she lied "because the D.A. said that if I don't tell the truth, that I would get arrested and he wouldn't believe me that [Love] did not do anything to me."

---

[9] As a result of his cross-examination of K. B., Love's counsel was aware of this second interview of K. B. by the State.

During a hearing on Love's motion for new trial, Love's trial counsel testified that he had a post-trial conversation with the prosecuting attorney and that the prosecuting attorney apparently told him he had "threatened K. B. with prosecution for perjury . . . ." A State's investigator testified that in a meeting between K. B. and the prosecuting attorney, the prosecuting attorney never threatened K. B. with prosecution and did not recall the word "perjury" ever being used. Neither K. B. nor the prosecuting attorney testified during the hearing.

Faced with K. B.'s varying accounts of Love's abuse, coupled with the lack of testimony by K. B. and the prosecuting attorney and the conflicting testimony by Love's trial counsel and the State's investigator as to an alleged threat of prosecution against K. B., the trial court found that "the contention that K. B. had been threatened with criminal prosecution is not supported by the credible evidence." Indeed, "[i]nconsistent statements by a witness do not, by themselves, establish that one statement is false and the other is true." *Perkins*, supra, 144 So3d at 470 (II). Accordingly, we conclude that the trial court's factual finding is not clearly erroneous. See *Peralta*, supra, 276 Ga. at 219 (2). As a result, we find no error. Cf. *Glover v. State*, 296 Ga. 13, 15 (2) (764 SE2d 826) (2014) (recantations relate only to the witness' credibility and are merely impeaching; defendant "offered no new

13

evidence beyond that, such as evidence that the witnesses had been 'convicted of perjury' or that their 'previous testimony was the purest fabrication'") (citation omitted); *Chauncey v. State*, 283 Ga. App. 217, 222-223 (6) (641 SE2d 229) (2007) ("a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness") (citation and punctuation omitted).

4. Love argues that the trial court erred in not excluding the testimony of Bridgett Barker, the director of a non-profit child abuse prevention organization in Lumpkin County. Specifically, Love contends that the trial court should have struck Barker's testimony concerning her qualifications as an expert witness when it determined that the State violated OCGA § 17-16-4 by failing to provide a summary of Barker's opinion to Love's counsel. This enumeration of error is without merit.

During trial, the State called Barker as an expert witness. After Barker testified concerning her background and qualifications, the trial court admitted her as an expert witness. Immediately thereafter, Barker testified that she reviewed the State's case file in preparation for her testimony, at which time Love's counsel objected. Love's counsel argued that Love had not been provided any discovery relating to Barker's proposed testimony, and the trial court noted that the State failed to submit a summary of Barker's testimony as required by OCGA § 17-16-4. The State offered

14

to make a proffer of Barker's testimony, which the trial court allowed without objection by Love.

After additional discussion between the trial court and the parties, Love's counsel asked that Barker's testimony be "eliminated," that she not be permitted to testify, and that the trial court instruct the jury "to disregard all the testimony of this witness." The trial court indicated it was "not inclined to do that" because Barker's general testimony concerning child abuse and child abuse accommodation syndrome had been admitted without objection. Further discussion ensued, during which the trial court offered Love's counsel the opportunity to cross-examine Barker on the limited testimony she had already given. Love's counsel wavered, so the trial court allowed Love's counsel an extended recess to consider how to proceed, after which Love's counsel stated that "[w]e are ready to go forward in whatever direction the Court wants us to go forward on."

The State indicated that it would not further question Barker on characteristics of the individual victims in the case; rather, she would be questioned only on the generic topics of grooming and self-mutilation. The trial court suggested that it was "fairly comfortable" with the proposed approach and again offered Love's counsel the opportunity to cross-examine Barker. Love's counsel continued to waver,

15

expressing concern that cross-examination might open the door to additional testimony by Barker. When the State again indicated it would not question Barker on whether she applied her general observations to the three individual victims in the case, the trial court recalled the jury, the State continued with its examination of Barker without objection, and Love's counsel cross-examined Barker.

(a) Love argues that the trial court should have struck Barker's initial testimony concerning her qualifications as an expert and instructed the jury to disregard Barker's testimony as a remedy for the State's violation of OCGA § 17-16-4. After Love's initial request to strike Barker's testimony, the trial court allowed Love's counsel a recess to consider whether to cross-examine Barker. After the recess, Love's counsel offered no further remedy and instead stated that Love would proceed "in whatever direction the Court wants us to go forward on." Thereafter, the trial court decided to limit Barker's testimony to general principles and not permit testimony from Barker specific to the three individual victims.

Love did not object to the trial court's ruling or offer any other remedy, much less renew his request to strike Barker's testimony.[10] "Because [Love] did not renew

---

[10] In a similar situation, our Supreme Court affirmed a trial court's decision to postpone an expert witness' testimony until a later point in the trial. See OCGA § 17-16-6; *Valentine v. State*, 293 Ga. 533, 535-536 (2) (748 SE2d 437) (2013). In the

16

the request after the trial court announced its remedy, we must assume that he was satisfied with that remedy." (Citation omitted.) *Vega v. State*, 285 Ga. 32, 34 (2) (673 SE2d 223) (2009). See also *Valentine v. State*, 293 Ga. 533, 535-536 (2) (748 SE2d 437) (2013); *Gorman v. State*, 318 Ga. App. 535, 540 (4) 734 SE2d 263) (2012). As a result, Love's argument has not been preserved for review. See *Washington v. State*, 310 Ga. App. 775, 779 (2) (714 SE2d 364) (2011) ("A defendant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal. The defendant must stand his or her ground. Acquiescence deprives the defendant of the right to complain further.") (Citation, footnote, and punctuation omitted).

(b) On appeal, however, Love has also raised trial counsel's failure to preserve the trial court's decision against excluding Barker's introductory testimony, as a sanction for the State's violation of OCGA § 17-16-4, as a claim of ineffective assistance of counsel. As a result,

> [w]e thus consider the alleged [error] asserted by [Love] within the analytical framework of an ineffectiveness claim, under which, in order to prevail, [Love] must show both that his trial counsel's performance was deficient and that, but for the deficient performance, there is a

---

present case, the trial court initially appeared to consider such a remedy before deciding to limit Barker's testimony to "information . . . as to what behaviors may be present without any sort of analysis with respect to any of these victims."

17

reasonable probability the outcome of the trial would have been different.

(Citations omitted.) *Hargett*, 285 Ga. at 84 (3). We conclude that, even if Love's trial counsel had continued to object to Barker's testimony and moved to exclude it in view of the State's violation of OCGA § 17-6-4, rather than acquiescing to the trial court's remedy, he has not demonstrated that he suffered harm resulting from his trial counsel's failure to object.

OCGA § 17-16-4 (a) (4) provides, in relevant part, that if an expert report "is oral or partially oral, the prosecuting attorney shall reduce all relevant and material oral portions of such report to writing and shall serve opposing counsel with such portions no later than ten days prior to trial." See also *Heywood v. State*, 292 Ga. 771, 776-777 (4) (b) (743 SE2d 12) (2013).

> If at any time during the course of the proceedings it is brought to the attention of the court that the state has failed to comply with the requirements of [OCGA § 17-16-4], the court may order the state to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the state from introducing the evidence not disclosed or presenting the witness not disclosed, *or may enter such other order as it deems just under the circumstances*.

18

(Emphasis supplied.) OCGA § 17-16-6. As a result, the trial court has broad discretion to remedy violations of OCGA § 17-16-4, *Gomez v. State*, 305 Ga. App. 204, 208 (5) (699 SE2d 395) (2010), and we review such rulings only for an abuse of discretion. See *Adams v. State*, 340 Ga. App. 1, 7 (2) (795 SE2d 330) (2016).

In this case, the trial court's remedy of disallowing Barker's testimony concerning specific observations of the three victims went further than simply requiring additional discovery or granting a continuance. See OCGA § 17-16-6. Under the circumstances, the remedy balanced Love's failure to object to Barker's background testimony with his desire to exclude that testimony, bearing in mind the State failed to provide Love with a summary of Barker's opinions, which resulted in no specific testimony by an expert witness concerning observations of the three victims. Furthermore, to obtain the "harsh sanction" of excluding a witness' testimony, the defendant must demonstrate that he was prejudiced by the testimony and that the State acted in bad faith. See OCGA § 17-16-6; *Adams*, supra, 340 Ga. App. at 7 (2). In this case, Love has made no such showing. As a result, we cannot say that the trial court's remedy was unjust.

In sum, Love cannot show that he was prejudiced by Barker's background testimony. Even had trial counsel continued to object to the trial court's proposed

19

remedy, rather than acquiescing to the remedy, there is no indication that the testimony would have been struck. Indeed, in view of the trial court's remedy to prevent any specific testimony concerning the three victims, we cannot say that the trial court abused its broad discretion. Finally, Love "has [again] failed to demonstrate that he was prejudiced . . . [g]iven the overwhelming evidence of his guilt . . . ." *Reid v. State*, 341 Ga. App. 604, 618 (7) (d) (i) (802 SE2d 42) (2017). As a result, Love has not satisfied the prejudice element of his claim of ineffective assistance of trial counsel based upon counsel's failure to preserve this issue for appeal. See *Gomez v. State*, 301 Ga. 445, 458-459 (6) (a) (801 SE2d 847) (2017); *Vega*, supra, 285 Ga. at 34 (2). See generally *Hargett*, supra, 285 Ga. at 83-84 (3) (multiple grounds of ineffective assistance of trial counsel based upon failure to preserve substantive arguments for appeal).

5. Love asserts that he received ineffective assistance of trial counsel "to the extent, if any, that trial counsel failed to preserve the other enumerations of error. . . ." Aside from the failure to preserve arguments discussed in Division 4 (b), supra, we have not found that trial counsel failed to preserve any arguments for appeal. Accordingly, this enumeration of error presents nothing for our review.

6. In two related enumerations of error, Love contends that Georgia's sodomy (OCGA § 16-6-2 (a) (1)) and statutory rape (OCGA § 16-6-3) statutes are unconstitutional. As a result, Love initially filed this appeal in the Supreme Court of Georgia. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (1). However, our Supreme Court transferred Love's appeal to this Court, finding that its jurisdiction had not been invoked because Love "failed to raise any challenge to § 16-6-3 below, and he did not raise his challenge to § 16-6-2 until his second amended motion for new trial." As a result, these enumerations are without merit because "[t]he Supreme Court's determination in [its] transfer order is final and binding." *Employees' Retirement Sys. of Ga. v. Harris*, 303 Ga. App. 191, 195 (2) (692 SE2d 798) (2010). See also *Amos v. State*, 298 Ga. 804, 807-808 (2) (783 SE2d 900) (2016) ("a constitutional attack on a criminal statute may not be raised for the first time on motion for new trial. Even where an untimely constitutional challenge is addressed on its merits by the trial court, [we] will decline to entertain the issue on appeal.") (citations omitted); *In re D.H.*, 283 Ga. 556, 557 (3) (663 SE2d 139) (2008) (Georgia's appellate courts "will not pass upon the constitutionality of a statute when the challenge was not directly and properly made in the trial court and distinctly ruled on by the trial court.").

In light of the foregoing, we conclude that the trial court did not err in denying Love's motion for new trial as amended.

*Judgment affirmed. Brown and Goss, JJ., concur.*